contains two separate *mens rea* elements).[5] After FOSTA, Section 1591 adds to the existing

scienter elements by defining "participation in a venture" as "*knowingly* assisting, supporting, or

facilitating a violation of subsection (a)(1)." (emphasis added).  *See* Section 5 of the Act.

Contrary to Plaintiffs' assertions, FOSTA does not "seek[] to evade constitutional requirements

for scienter." Compl. ¶ 165. Plaintiffs' concerns about criminal "liability based on mere

generalized knowledge of another's conduct," *id.*, is not based on any fair reading of the statutes.

Plaintiffs also misstate the law when they say "FOSTA's 'aggravated' offense under 18

U.S.C. § 2421A(b)(2) further dispenses with scienter by imposing liability based on 'reckless

disregard' of the fact that conduct 'contributed to sex trafficking.'" Compl. ¶ 167. To the

contrary, the "reckless disregard" language is relevant only to the defendant's maximum

---

[5] 18 U.S.C. § 1591 provides (emphasis added):

> (a) Whoever <u>knowingly</u>—
>> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), <u>knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact</u>, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

> ***

> (c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Notably, "advertising" is not included in Section 1591(c).

sentence, not to his underlying criminal liability. The criminal act prohibited in Section 2421A(b)(2) is the same as that in Section 2421A(a), namely, the intentional promotion or facilitation of prostitution. Critically, proof of intent is a higher *mens rea* than knowledge. *United States v. Bailey*, 444 U.S. 394, 403-08 (1980). Plaintiffs are unlikely to succeed in any First Amendment claim based on their misreading of these provisions.

Nor can Plaintiffs demonstrate injury-in-fact with respect to Count VI of the Complaint, which argues that FOSTA contains a constitutionally infirm *ex post facto* provision. *See* Compl. ¶¶ 168-174. "The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission." *Sellmon v. Reilly,* 551 F. Supp. 2d 66, 84 (D.D.C. 2008) (citing U.S. Const. art. I, § 9, cl. 3; *Collins v. Youngblood,* 497 U.S. 37, 42–43 (1990)). When evaluating an *ex post facto* claim, "[t]he controlling inquiry is one of practical effect," rather than facial difference. *Fletcher v. Reilly*, 433 F.3d 867, 879 (D.C. Cir.2006). Here, as the Department of Justice noted in its March 23, 2018, letter to the Office of Management and Budget, prosecutors can avoid any *ex post facto* problems by pursuing only newly prosecutable criminal conduct that takes place after the bill was enacted. *See* March 23, 2018, letter, attached. Plaintiffs have not alleged that FOSTA has been applied retroactively to them or shown that they engaged in conduct prior to April 11, 2018, that was proscribed by 18 U.S.C. § 1951 or 2421A and for which they now face a credible threat of prosecution.

### 2. Plaintiffs Are Unlikely to Succeed in Their Vagueness Challenge

Plaintiffs are similarly unlikely to succeed in their vagueness challenge. "Vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment, not the First Amendment." *United States v. Bronstein*, 151 F. Supp. 3d 31, 37 (D.D.C. 2015) (citing *Williams*, 553 U.S. at 304). "A criminal law is unconstitutionally vague if it is written so

21

imprecisely 'that it fails to give ordinary people fair notice of the conduct it prohibits,' or is 'so standardless that it invites arbitrary enforcement' by police, prosecutors, and juries." *Id.* (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)); *see also Hodge v. Talkin*, 799 F.3d 1145, 1171-72 (D.C. Cir. 2015). These concerns "are heightened in the First Amendment context." *Bronstein*, 2015 WL 9412106, at *3. Here, of course, as explained above, heightened scrutiny is not warranted because any activities that could lead to prosecution under § 1591 or 2421A relate to the illegal activity of prostitution or sex trafficking. Such activities are afforded no First Amendment protection. *Williams*, 553 U.S. at 297; *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 561-62. However, even if Plaintiff's vagueness challenge were related to First Amendment interests, "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Bronstein*, 151 F. Supp. 3d at 37 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Moreover, while "'[c]lose cases can be imagined under virtually any statute,'" it is "a 'mistake' to 'belie[ve]' that the mere fact that close cases can be envisioned renders a statute vague.'" *Hodge*, 799 F.3d at 1173 (quoting *Williams*, 553 U.S. at 305-06).

A vagueness challenge may be made on either an as-applied or a facial basis. An as-applied challenge does not claim that statutory terms are vague "'in all their applications,'" but that the law is invalid "insofar as [it] prohibits 'engaging in certain specified activities.'" *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 14 (2010)). When considering an as-applied vagueness claim, a court must determine whether the challenged law is vague as applied to the plaintiff's own conduct. *See id.* (citing *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982)). In contrast, a facial challenge alleges that a law is "vague in all its applications.'" *Id.* (quoting *Johnson*, 135 S. Ct. at 2561). Under either analysis, before striking

down a statute as unconstitutionally vague, a court "must consider whether [it] is fairly 'amenable to a limiting construction'" that would remove any constitutional infirmity. *Id.* at *5 (quoting *Skilling v. United States*, 561 U.S. 358, 405 (2010)).

Here, Plaintiffs do not specify in their Complaint whether their vagueness challenge to FOSTA is facial or as applied. Given that Plaintiffs raise this claim in a pre-enforcement context, it is appropriate to construe their claim solely as a facial challenge.[6] *See, e.g., N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265-66 (2d Cir. 2015) ("Because plaintiffs pursue this 'pre-enforcement' appeal before they have been charged with any violation of law, it constitutes a 'facial,' rather than "as-applied," challenge."). In either case, however, Plaintiff's claim fails.

As noted above, Plaintiff's vagueness challenge focuses on the alleged ambiguity of the terms "facilitate" and "promote" in FOSTA. While the statute does not define "facilitate" or "promote," the absence of a definition does not render these terms vague when they have a readily understood ordinary meaning. As the Supreme Court has confirmed, "criminal statutes, like other statutes, [must be interpreted] in a manner consistent with ordinary English usage."

---

[6] It is well established that "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Flytenow, Inc. v. FAA*, 808 F.3d 882, 895 (D.C. Cir. 2015) (quoting *Humanitarian Law Project*, 561 U.S. at 18– 19); *Hodge*, 799 F.3d at 1172 (recognizing that this limitation applies even where a statute implicates First Amendment interests). Here, that question itself is somewhat abstract since, as discussed above, Plaintiffs have not alleged intended actions in their Complaint that pose a credible threat of prosecution under FOSTA. However, to the extent Plaintiffs assert that their conduct is subject to prosecution, their vagueness challenge is premature. *See United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 589 (1972) (declining to consider vagueness challenge to oath requirement because "the law's future effect [on the plaintiff] remains wholly speculative"); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546-47 (5th Cir. 2008) (considering a facial vagueness challenge only because there was a factual record of charges against the plaintiffs); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 292 (6th Cir. 1997) (citing *Mazurie* in holding a facial vagueness challenge premature). In any event, however, as discussed herein, Plaintiffs' vagueness claim fails on the merits.

*Nichols v. United States*, 136 S.Ct. 1113, 1119 (U.S. 2016). Indeed, as discussed in Section A

above, similar wording and use of the terms promote and facilitate have been present in the

Travel Act and money laundering statutes for decades, and those terms have not been held

unconstitutionally vague on those contexts. To the contrary, "[t]he likelihood that anyone would

not understand any of those common words seems quite remote." *Hill v. Colorado*, 530

U.S. 703, 732 (2000). Section 2421A is limited to those who own, manage, or operate an

interactive computer service "with the intent to promote or facilitate the prostitution of another

person," thus giving ordinary people "fair notice of the conduct it prohibits," and it is not "so

standardless that it invites arbitrary enforcement by police, prosecutors, and juries." *See*

*Bronstein*, 151 F. Supp. 3d at 37 (quoting *Johnson,* 135 S. Ct. at 2556). These term bear no

resemblance to words and phrases—like "in a manner annoying to persons walking by"—that

courts have found result in facial vagueness because of their "fundamental subjectivity." *See id.*

at 38; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (identifying terms

"annoying," "indecent," "vagrants" as terms that the Supreme Court has held vague because they

require "untethered, subjective judgments").

### 3. Plaintiffs Are Unlikely to Succeed on Their Statutory Immunity Argument

Count IV of Plaintiffs' Complaint, alleging that FOSTA's "selective removal of statutory

immunity" violates the First Amendment, fails to state a claim upon which relief can be granted.

In essence, Plaintiffs argue that the First Amendment requires Section 230 of the

Communications Act of 1934 to exist in full, without exceptions. This is obviously incorrect, as

the First Amendment is self-executing, and does not need Congress to enact a statute in order to

offer protections. Further, this is contrary to the wording of Section 230 prior to the enactment of

FOSTA, which already set forth several exceptions to Section 230's applicability.[7] Section 230 is a policy choice made by Congress to provide more protections than that offered in the First Amendment, *see, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1355-56 (D.C.C. 2014), and Congress can amend that policy. In other words, Plaintiffs have no relief if Congress decides that websites should no longer have more protections than the First Amendment already provides. And, as previously set forth above, nothing in FOSTA actually restricts rights protected by the First Amendment.

In sum, Plaintiffs have not alleged an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by FOSTA, and have not demonstrated that a credible threat of prosecution under the Act actually exists. *See Susan B. Anthony List*, 134 S.Ct. at 2334. Furthermore, they are unlikely to prevail on the merits given that they have

---

[7] Prior to the enactment of FOSTA, Section 230(e) provided for the following exceptions:

> (e) Effect on other laws
>> (1) No effect on criminal law
>> Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal statute.
>> (2) No effect on intellectual property law
>> Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.
>> (3) State law
>> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.
>> (4) No effect on communications privacy law
>> Nothing in this section shall be construed to limit the application of the Electronic Communications Privacy Act of 1986 or any of the amendments made by such Act, or any similar State law.

47 U.S.C. § 230(e).

misstated the law and failed to allege claims upon which relief can be granted. Accordingly, denial of Plaintiffs' Motion for Preliminary Injunction and dismissal of this action is appropriate.

### C.   The Other Preliminary Injunction Factors Weigh Against Emergency Relief

Plaintiffs also fail to establish that the other three preliminary injunction factors support their motion for emergency relief. First, Plaintiffs fail to demonstrate, as they are required to do, "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. As the Supreme Court emphasized in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Id.* (citation omitted).

The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). To qualify as irreparable, in injury must be "certain and great, actual and not theoretical, beyond remediation, and also of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quotation omitted). Petitioner's speculative fears, therefore, cannot constitute an irreparable injury sufficient to obtain injunctive relief. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (It is a "well known and indisputable principle[]" that "[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time." (quotation omitted)). "The movant must provide proof . . . indicating that the harm *is certain to occur in the near future* . . . [and] that the alleged *harm will directly result from* the action which the movant seeks to enjoin." *Id.* (emphasis added).

26

Here, in claiming entitlement to emergency relief, Plaintiffs primarily rely on the oft-quoted statement, by a three-Justice plurality in *Elrod v. Burns*, 427 U.S. 347, 353 (1976), that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." However, as the D.C. Circuit has recognized, "there is no *per se* rule that a violation of freedom of expression *automatically* constitutes irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006). This is not a case where FOSTA, by its own terms, prohibits Plaintiffs' constitutionally-protected speech. To the contrary, as explained above, Plaintiffs misconstrue the statutory provisions at issue and, in fact, the promotion or facilitation of illegal prostitution would not qualify as protected speech. Plaintiffs' claims that their present activities are chilled thus are nothing more than self-inflicted injury and fail to establish irreparable harm for the same reasons they are insufficient to establish an injury-in-fact.

A party seeking a preliminary injunction also must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Pursuing Am.'s Greatness v. Fed. Elec. Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (balance of harms and public interest merge "because the government's interest *is* the public interest" (emphasis in original)). Here, they weigh decidedly against a preliminary injunction, particularly given that Plaintiffs seek to enjoin an Act of Congress that was "intended to serve the public interest." *Newdow*, 355 F. Supp. 2d at 293 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982)).

## V.   Conclusion

For all of the various reasons discussed above, Defendants respectfully submit that Plaintiffs' Motion should be denied and this case should be dismissed.

Dated:  July 12, 2018                              Respectfully submitted,

                                                              JESSIE K. LIU, D.C. Bar #472845
                                                              United States Attorney

                                                              DANIEL F. VAN HORN, D.C. Bar #924092
                                                              Chief, Civil Division

                                          By:      */s/ Jason T. Cohen*
                                                              JASON T. COHEN, ME Bar #004465
                                                              Assistant United States Attorney
                                                              555 Fourth St., N.W.
                                                              Washington, D.C. 20530
                                                              Phone: (202) 252-2523
                                                              Fax: (202) 252-2599
                                                              Email: jason.cohen@usdoj.gov

Exhibit 16

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 18 – 9126 MB |
| ████████████ Paradise Valley, Arizona 85253 | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona
*(identify the person or describe the property to be searched and give its location)*:

As described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

As described in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   04 ~ 19 ~ 2018   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   any Magistrate Judge on criminal duty in the District of Arizona.   
                                                                      *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   4/5/2018 5:05 pm   _____
                                                                      *Judge's signature*

City and state:     Phoenix, Arizona          U.S. Magistrate Judge Eileen S. Willett
                                                                      *Printed name and title*

DOJ-BP-0004425788

Attachment A-3

 

███████████████████████, Paradise Valley, Arizona 85253

A residence owned by Ocotillo Family Trust, in care of James and
Margaret Larkin, Trustees.

The location to be searched is described as a multi structure,
single family residence located in Paradise Valley, Arizona.
The address is ████████████████████ Paradise Valley,
Arizona 85253.  The residence is located on the south side of
the road and the number █████ is located on the mailbox located
in front of the residence, near the road.  The front of the
residence is white in color, has a U shaped driveway made of
rock and pavers and is covered in desert foilage.

Attachment B

Items To Be Seized

For the time period of January 1, 2010 through the present:

1. Evidence of wealth, assets, and real estate obtained from the illicit activity to include; notes, correspondence, and news articles related to prostitution, sex trafficking and/or Backpage and related entities.
2. Documentation of any funds received from Backpage or other related companies and disposition of those funds.
3. Records of assets held domestically and outside the United States.
4. Records of international travel to include U.S. or Foreign Passports.
5. Records of domestic travel expenditures to include travel tickets, hotel bills, copies of receipts, credit card statements, comprising evidence of expenditures during the money laundering scheme.
6. Records and correspondence regarding assets, including insurance policies, loan documents, and personal financial statements.
7. Records reflecting the acquisition or disposition of any residence, real property, vehicle, or other valuable asset.
8. Documents reflecting tangible personal expenditures and personal investments, real estate transactions, and property purchases.
9. Safe deposit box keys, storage locker keys and documents indicating the rental or ownership of such units.
10. United States or Foreign currency over $5,000 USD.
11. Documents containing identification or association with any trusts, trust agreements, bank accounts, deeds, or any documents associated with trusts, trustee information, transfer of trusts, or any assets associated with trusts (including transfer of those assets) and email correspondence.
12. Any property or proceed resulting from money laundering or international money laundering scheme to include computers, currencies, coins, precious metals, artwork, jewelry, home furnishings and vehicles.
13. Documents containing identification or association with the acquisition or disposition of cryptocurrencies (digital currencies), to include currency exchange information, digital wallet information (access codes), private address information (private key information), and digital currency statement or account ledgers. Digital currency is generally stored in digital "wallets," which essentially store the access codes that allows individuals to conduct digital currency transactions. To access digital currency, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to a bank account number, while the private key is like a password used to access an online account.

Electronic Data

The above described records may be stored on magnetic or electronic media including hard drive, portable devices such as thumb drives or any other media capable of storing information in a form readable by a computer. These records may also be stored on removable media digitally archived on external hard drives, CDs, DVDs, digital tape, and other forms of backup media.

Exhibit 17

View Issue Details

| ID: | Category: | Severity: | Reproducibility: | Date Submitted: | Last Update: |
|---|---|---|---|---|---|
| 12328 | [Backpage.com] backpage.com | minor | always | 2010-09-08 10:14 | 2010-09-25 17:54 |

| | | | |
|---|---|---|---|
| Reporter: | ferrerc | Platform: | |
| Assigned To: | ferrerc | OS: | |
| Priority: | urgent | OS Version: | |
| Status: | closed | Product Version: | |
| Product Build: | | Resolution: | fixed |
| Projection: | none | | |
| ETA: | none | Fixed in Version: | |
| | | Target Version: | |
| Task Type: | support | | |
| Task Activity: | Open | | |
| Task Scope: | Small | | |
| Source: | | | |
| Exp. Start Date: | | | |
| Exp. Comp. Date: | | | |
| Fiscal Quarter: | | | |

Summary:     Violated Terms of Use

We have two approached for moderating content:
1. Remove bad content in the post.
 - Pro: Consumer friendly, more work for our admin, allows our staff to be subjective and not cause too much damage.
 - Con: User often adds back bad content

2. Remove the post
 - Pro: Hurts user financially, teaches user lesson and easiest for our admion staff to do.
 - Con: User does not know what they did wrong, very consumer unfriendly, results in chargeback.

Description:     We are in the process of removing ads and pissing off a lot of users who will migrate elsewhere. I would like to go back to having our moderators remove bad content in a post and then locking the post from being edited.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BACKPAGE0001383

BACKPAGE00013804

Add to ad object:
Lock user from editing ad [ ] yes

- User will not be able to edit ad while ad is live.
- We can also prevent the ad from being edited when the ad is expired and renewed.

- the error message for the the user trying to edit the ad:
"Oops! You can not edit the post at this time since this post had previously violated our terms of use"

Steps To Reproduce:
Additional Information:
Attached Files:

Notes

(0036875)

2010-09-09 14:23

Our preference from the database perspective is to add a value to the ViolationFlag for this. Perhaps: "Edit Lock Out" or something like that.

Will this work? If so, please let us know the language you would like.

Thanks!

(0036877)
ferrerc
2010-09-09 14:31

Works for me.

(0037070)

2010-09-17 19:29

We'd like to review a number of User.Settings and Ad.ViolationFlag. values.

Can you take a look at the following to confirm that it all sounds good? If possible, please reply to this asap.

Thanks!

-------------
User.Settings
-------------

* Bypass Captcha - The user can bypass captcha.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

* Bypass Filters - The user can bypass filters.

* Bypass Fraud Alerts - The user can bypass fraud alerts.

* Bypass Moderation - The user can bypass moderation.

* Whitelist Ad - The users ad is whitelisted and won't be a candidate for violations, aka no ghosting, spam, etc.

New Values:

* No HTML - Prohibits the user from using HTML in any of their ads.

* Forced Moderation - Forces the Moderation of all ads by this user.

* Edit Lock Out - Locks the user out of being able to edit any ads.

-------------
Ad.ViloationFlag
-------------

Existing values:

* Inappropriate Content - Set by report ad and leads to potential removal. No information on this is displayed to the user.

* Wrong Category - Set by report ad and leads to potential removal. No information on this is displayed to the user.

* Over Posted - Set by either: 1) report ad and leads to potential removal, or 2) backend analysis that also changes the Status to Ghosted. No information on this is displayed to the user.

* Spam - Set by backend analysis which also changes the Status to Community Removed. The user will see that there add has been Community Removed.

* Ghosted - Set by backend analysis which also removes this add from search results. No information on this is displayed to the user.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BACKPAGE00013885

New values:

* Strip Term From Ad - We're going to add this so we can set this whenerver the backend analysis strips out a term. It's just for internal statistics. No information on this is displayed to the user.

* Violated Terms of Use - We belive this is the value for this task. If so, staff would flasg this and the user would see the "Oops! You can not edit the post at this time since this post had previously violated our terms of use"

* Edit Lock Out - This would be inherited from a user setting, manually set, or automatically set based on the age of the user's account. The user would see a message that they can not edit the ad.

* No HTML - This would be inherited from a user setting or manually set on a single ad. The user would see a message that they can not edit the ad.

---

| | |
|---|---|
| (0037074)<br>ferrerc<br>2010-09-17 21:20 | Looks good. |
| (0017084)<br>[redacted]<br>2010-09-18 20:01 | Renaming this task for clarity. |
| (0037087)<br>[redacted]<br>2010-09-18 20:21 | This feature is in place and ready for previewing on devel.<br><br>Here's a tour from a user perspective:<br><br>* Please go to the ad management page and click to edit the ad:<br><br>http://admin.devel.backpage.com/online/classifieds/VerifyAd?oid=2414458&id=3b7ac3e73e5d2b49e8085d634ee07bd6-1278625613 [^]<br><br>* You should see the message stating that the ad has violated the terms of use and that the ad can't be edited.<br><br>--- |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BACKPAGE0001386

To flag an ad in this way, set the Ad's ViolationFlag field to "Violated Terms of Use" as seen here:

http://admin.devel.backpage.com/tools/object-editor?oid=2414458 [↗]

Please let us know how it looks. Once the schema changes are wrapped, we can push this out.

Also, please send us the Spanish Translation.

Thanks!

---

(0037094)
ferrerc
2010-09-19 21:43

Looks good.

I have sent out a request for the translation below:
Sorry! You can not edit the post at this time since this post had previously violated our terms of use"

---

(0037099)
2010-09-20 12:37

Sounds good thanks.

---

(0037101)
ferrerc
2010-09-20 12:51

ENGLISH
"Sorry! You can not edit the post at this time since this post had previously violated our terms of use"

SPANISH
"Lo siento! En este momento usted no puede editar su anuncio desde que el anuncio violo nuestras condiciones de uso."

---

(0037103)
2010-09-20 13:01

Thanks. This change is in place.

http://admin.devel.espanol.devel.backpage.com/online/classifieds/EditAd?oid=2414458&id=3b7ac3e73e5d2b49e8085d634ee07bd6-1278625613 [↗]

http://admin.devel.backpage.com/online/classifieds/EditAd?oid=2414458&id=3b7ac3e73e5d2b49e8085d634ee07bd6-1278625613 [↗]

Note: we changed the English to "We're sorry" as the other two similar messages said "We're sorry" If this is not ok, please let us know.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BACKPAGE0001387

---

If this looks good, we'll roll it out with the final schema changes tonight.

(0037116)
ferrerc
2010-09-20 13:53
(edited on: 2010-09-20 13:53)

We are good. You can launch tonight.

(0037133)
2010-09-20 17:06

Question: how would you like to handle this for renewal ads?

Should these ads renew?

Should we clear the slate on renew since it will be going back into the moderation queue as new?

Thanks!

(0037137)
ferrerc
2010-09-20 17:27

Should these ads not renew?
ANSWER: no

Should we clear the slate on renew since it will be going back into the moderation queue as new?
ANSWER: Yes

We will let them renew their ad. It means we can let them change their copy.
More than likely, if we set a user or ad on edit lock out, we will have also set the user to forced moderation. The edit lock out is to prevent someone from changing their ad or ads after they passes moderation.

(0037152)
2010-09-20 19:41

Should we re-set the Violation Flag to remove that the ad violated the Terms of Service when they renew it?

If so, they will be able to edit the ad again, including after it passes moderation.

If not, then after it passes moderation, it will remain locked down (no editing) and will display the violation message.

Please let us know.

(0037154)
ferrerc
2010-09-20 21:16

My gut tells me to be less draconian:

So, we can re-set the Violation Flag to remove that the ad violated the Terms of Service when they renew it. They will be able to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BACKPAGE0001388

(edited on: 2010-09-20 21:41)   edit the ad again, including after it passes moderation.

If a user becomes a frequent problem, then we will lock out of edit from the user object.

(0037155)

2010-09-20 21:40

This sounds good. Thanks!

(0037197)

2010-09-21 14:41

This change has been released.

If you can run a few tests by setting an ad or two as "Violated Terms of Use", that would be great.

Thanks!

(0037204)
HyerD
2010-09-21 14:51

Tested this one too - it worked perfectly.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

BACKPAGE0001389

## __DECLARATION OF JOHN BRUNST__

I, John Brunst, declare as follows:

1.     I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.     I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.     I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following assets and their contents (collectively, the "Subject Assets"):

      a.     ███████████  Bank account number ending in xx3825;

      b.     ███████████  account number ending in xx6878;

      c.     ███████████  account number ending in xx4954;

      d.     ███████████  account number ending in xx7892;

      e.     ███████████  account number ending in xx7889;

      f.     ███████████  account number ending in xx7888;

      g.     ███████████  account number ending in xx6485;

      h.     ███████████  account number ending in xx0582;

      i.     ███████████  account number ending in xx3873; and

      j.     ███████████  account number ending in xx4862.

4.     I did not give permission or otherwise consent to the government's seizure of the Subject Assets.

5.     I join in and consent to the request in the Motion to consolidate the related cases identified in the caption of the Motion and in the separately filed Notice of Related Cases.

3512

1         I swear under penalty of perjury of the laws of the United States of America that the

2    foregoing is true and correct.  Executed this 30 day of July, 2018 in Phoenix, Arizona.

3

4    _____

5                      John Brunst

435617-1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3512

**DECLARATION OF JOHN BRUNST**

I, John Brunst, declare as follows:

1.     I am a defendant in the above-entitled action.  Based on my review of historical financial records, including audit reports prepared by independent auditors, and my personal knowledge, the facts set forth herein are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.     From 1992 to January 2013, I served as the Chief Financial Officer of New Times, Inc. ("New Times").

3.     In January 2006, New Times purchased the *Village Voice*.  Village Voice Media Holdings, LLC ("VVMH") was created as a holding company for the *Village Voice* and New Times' publications.

4.     In January 2013, New Times sold VVMH's newspaper holdings to Voice Media Group ("VMG").  Following that transaction, New Times was renamed Medalist Holdings, Inc. ("Medalist").  From January 2013 onwards, I served as the Chief Financial Officer of Medalist.

5.     From December 2012 to the present, I have also served as the Treasurer of Cereus Properties, LLC ("Cereus Properties"), an indirect subsidiary of Medalist.

6.     From 1993 onwards, the shareholders of New Times, and later Medalist, were Michael Lacey, James Larkin, Scott Spear, myself, and trusts for the benefit of Troy Larkin and Ramon Larkin (Larkin's sons).

7.     In Fiscal Year Ending ("FYE") June 2000, Alta Communications, a private equity firm, made an investment in New Times.  In connection with that investment, New Times issued a shareholder distribution of ▮▮▮▮▮▮▮▮.  Of that amount, ▮▮▮▮▮▮▮▮ was distributed to the individual shareholders of New Times.  The remaining amount was used to pay the expenses of the transaction.

8.     In FYE June 2003, as a result of the sale of New Times' Los Angeles publication, New Times issued shareholder distributions, including tax payments on behalf of the shareholders, in the amount of ▮▮▮▮▮▮▮.  Of that amount ▮▮▮▮▮▮▮ was

3511329.1

1  distributed to the individual shareholders of New Times.  The remaining amount of
2  $595,789 was distributed to Alta Communications.

3        9.    In FYE June 2004, New Times issued shareholder distributions from excess
4  cash, including tax payments on behalf of the shareholders, in the amount of ████████.
5  Of that amount, ███████ was distributed to the individual shareholders of New Times.
6  The remaining amount of ████████ was distributed to Alta Communications.

7        10.    In FYE June 2005, as a result of a debt recapitalization and excess cash, New
8  Times issued shareholder distributions, including tax payments made on behalf of the
9  shareholders, in the amount of ████████.  Of that amount, ████████ was distributed to
10  the individual shareholders of New Times.  The remaining amount of ████████ was
11  distributed to Alta Communications.

12        11.    In FYE ending December 2006, New Times acquired the *Village Voice*.  In
13  connection with the acquisition, City Press Publishing, Inc. ("City Press Publishing"), a
14  consortium of private equity firms, received a minority ownership interest in VVMH.  As a
15  result of a debt recapitalization in connection with the acquisition, New Times issued
16  shareholder distributions, including tax payments made on behalf of the shareholders, in
17  the amount of ████████.  Of that amount, ████████ was distributed to the individual
18  shareholders of New Times.  Of the remaining amount, Alta Communications received
19  ████████ and City Press Publishing received ████████.

20        12.    In total, from 2000 to 2006, New Times issued ████████ in shareholder
21  distributions, including tax payments made on behalf of the shareholders.  Of that amount
22  ████████ was distributed to the individual shareholder of New Times. The remaining
23  amount was distributed to outside investors, including Alta Communications and City
24  Press Publishing, and to pay the expenses of the Alta transaction.

25        13.    Backpage was formed in 2004.  From 2004 to 2006, Backpage generated
26  ████████ in EBITDA (earnings before interest, tax, depreciation, and amortization).
27  During that same time period, New Times generated ████████ in operating income.  In
28

1   other words, from 2004 to 2006, Backpage accounted for $1.9% of New Times' operating

2   income.

3       14.    In January 2013, New Times sold its newspaper business to VMG in a seller-

4   financed transaction.  From January 2013 to March 2018, VMG made loan and rent

5   payments to Cereus Properties totaling █████████   Of these payments ███████ was

6   distributed to the individual shareholders of Medalist.

7       I declare under penalty of perjury under the laws of the United States of America

8   that the foregoing is true and correct.

9       Executed July 30, 2018, at Phoenix, Arizona.

10

11  _____

12  John Brunst

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JAMES LARKIN

I, James Larkin, declare as follows:

1.   I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.   I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.   I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following assets and their contents (collectively, the "Subject Assets"):

      a.   ▮▮▮▮▮▮▮▮ account number ending in xx1889;

      b.   ▮▮▮▮▮▮▮▮ account number ending in xx2592;

      c.   ▮▮▮▮▮▮▮▮ ccount number ending in xx1938;

      d.   ▮▮▮▮▮▮▮▮ Certificate of Deposit Account Registry Service ("CDARS") account number ending in xx8103;

      e.   ▮▮▮▮▮▮▮▮ CDARS account number ending in xx8162;

      f.   ▮▮▮▮▮▮▮▮ CIDARS account number ending in xx8189;

      g.   ▮▮▮▮▮▮▮▮ account number ending in xx3873; and

      h.   ▮▮▮▮▮▮▮▮ account number ending in xx4862.

4.   I did not give permission or otherwise consent to the government's seizure of the Subject Assets.

I swear under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed this 30 day of July, 2018 in Paradise Valley, Arizona.

James Larkin

435617-1

1

# DECLARATION OF MARGARET LARKIN

I, Margaret Larkin, declare as follows:

1.    I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.    I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.    I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following assets and their contents (collectively, the "Subject Assets"):

      a.    ▇▇▇▇▇▇▇▇▇▇▇▇ccount number ending in xx0012;

      b.    ▇▇▇▇▇▇▇▇▇▇▇▇ account number ending in xx2020.

4.    I did not give permission or otherwise consent to the government's seizure of the Subject Assets.

5.    I join in and consent to the request in the Motion to consolidate the related cases identified in the caption of the Motion and in the separately filed Notice of Related Cases.


I swear under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed this *30* day of July, 2018 in Paradise Valley, Arizona.

Margaret Larkin

435617-1

1

### DECLARATION OF MICHAEL LACEY

I, Michael Lacey, declare as follows:

1.      I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.      I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.      I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following assets and their contents (the "Subject Assets"):

      a.      ███████████████████ account number ending in xx3620;

      b.      ███████████ account number ending in xx2523, which the government may also have designated as account number ending in xx44S10 in the civil seizure bearing case number 2:18-mj-00723;

      c.      █████████ account number ending in xx2485;

      d.      █████████ account number ending in xx3126;

      e.      █████████ Certificate of Deposit Account Registry Service ("CDARS") account number ending in xx8316;

      f.      ███████████ CDARS account number ending in xx8324;

      g.      ███████████ CDARS account number ending in xx8332;

      h.      █████████ account number ending in xx1897;

      i.      █████████████ account number ending in xx1210;

      j.      ████████ account number ending in xx3873; and

      k.██████ account number ending in xx4862.

4.      I did not give permission or otherwise consent to the government's seizure of the Subject Assets.

5.    I join in and consent to the request in the Motion to consolidate the related cases identified in the caption of the Motion and in the separately filed Notice of Related Cases.

I swear under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed this 31 day of July, 2018 in San Francisco Calif.

_____
Michael Lacey

435617-1

2

Scanned with CamScanner

## <u>DECLARATION OF RAMON LARKIN</u>

I, Ramon Larkin, declare as follows:

1.      I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.      I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.      I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following asset and its contents (the "Subject Asset"):

      a.      ████████████ account number ending in xx7054.

4.      I did not give permission or otherwise consent to the government's seizure of the Subject Asset.

5.      I join in and consent to the request in the Motion to consolidate the related cases identified in the caption of the Motion and in the separately filed Notice of Related Cases.

I swear under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed this 30th day of July, 2018 in Kansas City, Missouri.

                  _____
                          Ramon Larkin

435617-1

1

## <u>DECLARATION OF TROY LARKIN</u>

I, Troy Larkin, declare as follows:

1.     I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.     I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.     I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following asset and its contents (the "Subject Asset"):

a.     ████████████. account number ending in xx8225.

4.     I did not give permission or otherwise consent to the government's seizure of the Subject Asset.

5.     I join in and consent to the request in the Motion to consolidate the related cases identified in the caption of the Motion and in the separately filed Notice of Related Cases.


I swear under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed this  30  day of July, 2018 in Brooklyn, New York.

*Troy Larkin*
Troy Larkin

435617-1

1

**DECLARATION OF SCOTT SPEAR**

I, Scott Spear, declare as follows:

1.      I am an individual over the age of eighteen.  I submit this declaration based upon my own personal knowledge and, if called as a witness, could and would competently testify thereto under oath.

2.      I submit this declaration in support of the *Notice of Motion and Motion to Vacate or Modify Seizure Warrants* (the "Motion") with which this declaration is being concurrently filed.

3.      I am a legal and/or beneficial owner of, or hold a direct or indirect interest in, the following assets and their contents (the "Subject Assets"):

      a.   ▮▮▮▮▮▮▮ safety deposit box number ending in xx7224;

      b.   ▮▮▮▮▮ account number ending in xx6292;[1]

      c.   ▮▮▮▮▮▮▮ account number ending in xx3645;

      d.   ▮▮▮▮▮▮▮ account number ending in xx0178;

      e.   ▮▮▮▮▮▮ account number ending in xx0151;

      f.   ▮▮▮▮▮ account number ending in x6910;

      g.   ▮▮▮▮▮▮ Services account number ending in xx6943-01;

      h.   ▮▮▮▮▮▮ Services account number ending in xx5280-01;

      i.   ▮▮▮▮▮ account number ending in xx3873; and

      j.   ▮▮▮▮▮ account number ending in xx4862.

4.      I did not give permission or otherwise consent to the government's seizure of the Subject Assets.

5.      I join in and consent to the request in the Motion to consolidate the related cases identified in the caption of the Motion and in the separately filed Notice of Related Cases.

---

[1] I will note that the government seized the ▮▮▮▮▮▮▮ account number ending in xx7224 and the ▮▮▮▮▮ account number ending in xx6292 in the related civil seizure case numbers 18-mj-00719 and 18-mj-00724, respectively, but has since returned those accounts.  However, it appears those seizure cases remain pending, and so I am including these accounts in this declaration.

1    I swear under penalty of perjury of the laws of the United States of America that the

2    foregoing is true and correct. Executed this **31** day of July, 2018 in Scottsdale, Arizona.

3

4                                           Scott G Spe

                                                    Scott Spear

5

6

7    435617-1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27