ORIGINAL

Paul J. Cambria, Jr. (CA 177957)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com

*Attorneys for Claimant*
Michael Lacey



UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **In the Matter of the Seizure of:**<br><br>Any and all funds held in Republic Bank of Arizona Account(s) xxxx1889, xxxx2592, xxxx1938, xxxx2912, and xxxx2500. | CASE NO.2:18-cv-6742-RGK (MAAx)<br>18-MJ-00722-PJW<br><br>[Related to Case Nos. 18-MJ-00712, 18-MJ-00713, 18-MJ-00715, 18-MJ-00716, 18-MJ-00718, 18-MJ-00719, 18-MJ-00720, 18-MJ-00721, 18-MJ-00723, 18-MJ-00724, 18-MJ-00751, 18-MJ-00797, 18-MJ-00798, 18-MJ-00996, 18-MJ-00997, 18-MJ-01427, and 18-MJ-1863]<br><br>CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELEASE OF CERTAIN UNTAINTED FUNDS<br><br>(First request)<br>(Oral Argument Requested) |

## INTRODUCTION

Claimant Michael Lacey respectfully moves this Court to issue an order requiring the government to immediately release certain funds to him because those

Paul J. Cambria, Jr. (CA 177957)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com

*Attorneys for Claimant*
Michael Lacey

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In the Matter of the Seizure of:<br><br>Any and all funds held in Republic Bank of Arizona Account(s) xxxx1889, xxxx2592, xxxx1938, xxxx2912, and xxxx2500. | CASE NO.2:18-cv-6742-RGK (MAAx)<br>18-MJ-00722-PJW<br><br>[Related to Case Nos. 18-MJ-00712, 18-MJ-00713, 18-MJ-00715, 18-MJ-00716, 18-MJ-00718, 18-MJ-00719, 18-MJ-00720, 18-MJ-00721, 18-MJ-00723, 18-MJ-00724, 18-MJ-00751, 18-MJ-00797, 18-MJ-00798, 18-MJ-00996, 18-MJ-00997, 18-MJ-01427, and 18-MJ-1863]<br><br>CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELEASE OF CERTAIN UNTAINTED FUNDS<br><br>(First request)<br>(Oral Argument Requested) |

## INTRODUCTION

Claimant Michael Lacey respectfully moves this Court to issue an order requiring the government to immediately release certain funds to him because those

funds are untainted and their immediate release is necessary to ameliorate the undue harm he has suffered from the government's improper seizure. As discussed in greater detail below, Mr. Lacey has demonstrated to the government that these particular funds are untainted; nonetheless, the government has refused to release them or to investigate the propriety of the government's seizure of the funds. These funds are vital to Mr. Lacey's ability to pay for his living expenses and are equally important to fund his defense in a criminal action pending in the District of Arizona. Because the government's seizure of these untainted funds as well as others has rendered Mr. Lacey unable to meet his daily financial obligations, and to defend himself against the charges pending in the District of Arizona, Mr. Lacey respectfully requests that this Court hear the instant motion on an accelerated basis and grant the relief requested.

## BACKGROUND

**I.    The government has sought and obtained the pretrial restraint of the vast majority of Mr. Lacey's assets.**

On March 28, 2018, a grand jury sitting in the District of Arizona issued an indictment ("Indictment") against Mr. Lacey and his co-defendants in the case captioned *United States v. Lacey*, 18-CR-00422-PHX-SPL (BSB) ("Arizona Prosecution"). (*See* Indict., attached as Ex. A to the Declaration of Paul J. Cambria ("Cambria Decl.").) The government charged Mr. Lacey with conspiracy to facilitate prostitution (18 U.S.C. §§ 371, 1952(a)(3)(A)), facilitation of prostitution (18 U.S.C. §§ 1952(a)(3)(A), (b)(1)(i)), conspiracy to commit money laundering (18 U.S.C. § 1956(h)), concealment money laundering (18 U.S.C. § 1956(a)(1)(B)(i)), international promotional money laundering (18 U.S.C. § 1956(a)(2)(A)), and transactional money laundering (18 U.S.C. § 1957). (*See id.* at ¶¶ 157-71.) These charges purportedly arise out of Mr. Lacey's former involvement with the web-publishing entity Backpage.com, LLC ("Backpage") which operated a website to which third-party users had the ability

to post content. (*See id.* at ¶¶ 1-16.) The government's theory is that Mr. Lacey should be held criminally liable for the content of advertisements posted to Backpage by third-party users by virtue of his prior involvement with Backpage. (*See id.*) Mr. Lacey pleaded not guilty to the crimes charged and has mounted a vigorous defense to the government's theory.[1]

By the time the original Indictment was unsealed, the government had seized the vast majority of Mr. Lacey's assets, even though he must be presumed to be innocent of the crimes charged at this stage, and the conduct upon which the Indictment is based involves presumptively protected First Amendment activities. Further complicating the seizure issues in this case is that Mr. Lacey earned substantial income long before Backpage was formed and he continues to earn substantial income separate and apart from Backpage. (*See* Henze Cook Decl. ¶ 41.) Nonetheless, he has been barred from the use of the vast majority of his assets. (*See id.* ¶¶ 9-12.)

## II. The government's pretrial restraint of Mr. Lacey's assets causes daily hardships.

Each day that the government's pretrial restraint of Mr. Lacey's assets remains in place causes an undue hardship because the restraint has rendered Mr. Lacey unable to meet basic financial obligations. (*See id.*) Mr. Lacey has bills related to living expenses that he is unable to pay. (*See id.* ¶ 9.) Further, the restraint of his assets has, at times, made compliance with his conditions of release difficult. (*See id.* ¶¶ 10-11.)

Compounding the daily personal struggles presented by lack of access to funds, the government's pretrial restraint of Mr. Lacey's assets has rendered him unable to defend the instant charges. (*See id.* ¶ 12.)

---

[1] A grand jury, sitting in the District of Arizona, returned a superseding indictment against Mr. Lacey and his co-defendants on July 25, 2018. (*See* Super. Indict., attached as Ex. C to the Cambria Decl.) The government's theory of liability is the same as that alleged in the original Indictment. (*See id.*)

3

### III. The government rebuffed Mr. Lacey's request for prompt disclosure of the seizure warrants, warrant applications, and forfeiture orders.

In recognition of the devastation that the government's pretrial restraint of Mr. Lacey's assets would and does have on him, Mr. Lacey's counsel immediately requested that the government provide the seizure warrants, warrant applications, and forfeiture orders issued in connection with the seizure of his assets. (*See* Cambria Decl. ¶ 9; Henze Cook Decl. ¶¶ 27, 33.) Initially, the government denied that it had the ability to produce those documents any earlier than the end of May, even though each day that Mr. Lacey's assets remained subject to seizure caused undue hardship on him. (*See* Cambria Decl. ¶ 13.) Consequently, Mr. Lacey and his co-defendants moved for the prompt disclosure of those documents and for the accelerated hearing of their disclosure motion. (*See* Defs.' Mot. for Discl., attached as Ex. B to the Cambria Decl.) On May 18, 2018, the government began disclosing the requested documents to Mr. Lacey and his co-Defendants. (*See* Cambria Decl. ¶ 16.) The government's disclosure rendered the discovery motion moot.

### IV. The government has sought and obtained the pretrial restraint of funds that are unrelated to Backpage.

Separate and apart from the constitutional challenges Mr. Lacey has brought and may bring with respect to the seizure of revenue or assets derived from his involvement with Backpage, a brief review of Mr. Lacey's financial records indicates that the government's pretrial restraint of the funds in three of Mr. Lacey's accounts with Republic Bank was improper because those funds are unrelated to Backpage. On May 5, 2017, Cereus Properties LLC ("Cereus") issued a check payable to Mr. Lacey in the amount of $451,205.36. (*See* May 5, 2017 Check, attached as Ex. C to the Henze Cook Decl.) On May 23, 2017, Cereus issued a check payable to Mr. Lacey in the amount of $225,602.68. (*See* May 23, 2017 Check, attached as Ex. D to the Henze Cook Decl.)

The total of those two checks is $676,808.04. (*See* Exs. C, D to the Henze Cook Decl.) The checks were not endorsed; instead, they were voided. (*See id.*)

Michele McSherry, the Office Manager for Cereus, indicated that those two checks constituted distributions owed to Mr. Lacey from Village Voice Media Holdings. (*See* May 14, 2018 Michele McSherry Decl., attached as Ex. E to the Henze Cook Decl., at ¶¶ 3-4.) Shortly after receipt of the checks, Mr. Lacey contacted Cereus and asked that the funds be wired to his account at Republic Bank ending in 2485 instead. (*See id.* at ¶ 6.) Ms. McSherry intended to wire the money to Mr. Lacey's account from a Cereus account ending in 4862 ("4862 Cereus Account"). (*See id.* at ¶ 7.) The 4862 Cereus Account contains funds generated solely by Village Voice Media Holdings and rental income from the Phoenix New Times newspaper building. Those sources of revenue are unrelated to Backpage. (*See* Henze Cook Decl. ¶ 41.)

However, by virtue of nothing more than a clerical error on her part, Ms. McSherry wired the funds to Mr. Lacey's account from a Cereus account ending in 3873 ("3873 Cereus Account"). (*See* Ex. E to Henze Cook Decl. at ¶ 7.) The 3873 Cereus Account holds funds generated from Backpage. (*See* Henze Cook Decl. ¶ 47.) Critically, on June 1, long before commencement of the instant prosecution, Ms. McSherry recognized the mistake and transferred $676,808.04 from the 4862 Cereus Account to the 3873 Cereus Account to rectify the two accounts. (*See* Ex. E to Henze Cook Decl. at ¶¶ 9-11.) A contemporaneous bank statement for the 4862 Cereus Account indicates that Ms. McSherry did, in fact, rectify those two accounts on June 1, 2017. (*See* June 2017 Statement for 4862 Cereus Account, attached as Ex. F to the Henze Cook Decl.)

Ms. McSherry's clerical error was compounded by the fact that Mr. Lacey transferred funds from the Republic Bank account ending in 2485—an account he has always understood to hold funds generated solely from Village Voice Media Holdings and the rent from the Phoenix New Times newspaper building—to two other bank

5

accounts held at Republic Bank (accounts ending in 1897 and 3126). (*See* Henze Cook Decl. ¶ 14.) Those accounts, too, have been seized by virtue of receiving funds from the Republic Bank account ending in 2485. There are no independent allegations of taint regarding those two accounts. (*See id.* at ¶ 38 n.3.)

### V. Mr. Lacey attempted to obtain release of the funds that are unrelated to Backpage without judicial intervention.

On May 16, 2018, amid discussions with the government about prompt disclosure of the seizure documents, Mr. Lacey's counsel contacted the government to seek the immediate release of the funds held in Republic Bank accounts ending in 2485, 1897, and 3126. (*See* May 16, 2018 Email from J. Cook to J. Kucera, attached as Ex. G to the Henze Cook Decl.) To allay the government's concern about the propriety of those funds, counsel provided the government with the McSherry Declaration, the voided checks, and the June 2017 statement for the 4862 Cereus Account. (*See id.*) Further, Mr. Cambria conveyed to the government that Ms. McSherry was willing to speak with the government about the wire transfer and the clerical error. (*See* Cambria Decl. ¶ 19; Ex. H to the Henze Cook Decl.)

To Mr. Lacey's detriment, the government has refused to release the funds to him without conducting its own investigation. (*See* Ex. G to the Henze Cook Decl.) After being repeatedly pressed by defense counsel for a decision on the release of the funds, which is vital to Mr. Lacey's ability to pay for living expenses and a defense to the Arizona Prosecution, the government indicated that it could not reach a decision by May 25, 2018. (*See* Ex. H to the Henze Cook Decl.) Since then, the government has indicated that it will not interview Ms. McSherry or otherwise investigate the propriety of the government's seizure of these funds. Instead, the government indicated that it will not take any action on these funds outside the context of a civil

forfeiture action (which it has not brought) and civil discovery. (*See* Cambria Decl. ¶ 22.)

**ARGUMENT**

Mr. Lacey respectfully requests that this Court enter an order requiring the government to release the funds held in Mr. Lacey's Republic Bank accounts for accounts ending in 2485, 1897, and 3126 because those funds are unrelated to Backpage and the government cannot seek pretrial restraint of assets that are unrelated to Backpage. It is well-settled that the government has no authority to seize so-called untainted assets prior to trial. *See Luis v. United States*, 578 U.S. ___, 136 S.Ct. 1083, 1094 (2016) ("We have found no decision of this Court authorizing unfettered, pretrial forfeiture of the defendant's own 'innocent' property—property with no connection to the charged crime."); *cf. United States v. Ripinksy*, 20 F.3d 359, 363 (9th Cir. 1994) ("[S]ubstitute assets are not subject to pretrial restraint.").

Here, the government's continued pretrial restraint of Mr. Lacey's funds held in Republic Bank accounts ending in 2485, 1897, and 3126 does not withstand scrutiny of any kind. The funds at issue are derived from the sale of Village Voice Media Holdings, one of the many sources of income distributed to Mr. Lacey separate and distinct from Backpage. Consequently, the government's continued restraint of Mr. Lacey's income derived from the sale of Village Voice Media Holdings is unjustifiable. The government's continued use of the "nuclear weapon of the law" in connection with the Arizona Prosecution should be cabined, and with respect to these particular funds, curtailed. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329 (1999) (alteration omitted).

Equally important, Mr. Lacey had no involvement with or knowledge of Ms. McSherry's clerical error. (*See* Henze Cook Decl. ¶ 50.) In fact, Ms. McSherry's clerical error was contrary to Mr. Lacey's long-standing instructions to Cereus to limit its wire transfers into his Republic Bank account ending in 2485 to revenues generated

solely from Village Voice Media Holdings and the rent from the Phoenix New Times newspaper building. (*See id.* ¶ 45.) Therefore, Mr. Lacey could not have had the requisite specific intent to launder the $676,808.04 at issue in violation of the money laundering statutes charged in the Indictment or Superseding Indictment (18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1957(a)) when he had *no prior knowledge* of the actions Ms. McSherry undertook to cause the error and the error was *contrary to* the instructions he had given Cereus.

As the Ninth Circuit has explained, "[m]oney laundering is a specific intent crime, and it requires *knowledge on the part of the defendant.*" *United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003) (emphasis added). In particular, to establish money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the government must establish that a defendant "*knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . *knowing* that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." *Id.* (emphasis added). Similarly, under 18 U.S.C. § 1957, to establish money laundering, the government must prove that a defendant "*knowingly* engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." *Id.* (emphasis added). Neither of these statutes permit conviction for money laundering when the defendant is oblivious to the purported unlawful financial transaction at issue. Further, there are no known cases of money laundering under these charges that result in a conviction when a third party engages in a transaction unknown to a defendant and *contrary to the specific instructions given by the defendant.*

Mr. Lacey's counsel continues to review the disclosed documents and reserves the right to bring additional challenges to the government's seizures, and has joined in the motion filed by James Larkin challenging the government's pretrial restraint of the assets of the defendants named in the Arizona Prosecution. However, the isolated clerical error resulting in the seizure of the Republic Bank accounts ending in 2485, 1897, and 3126 and the urgent need for release funds to pay for living expenses and a defense, merits the instant motion for immediate release of the funds held in those accounts.

## CONCLUSION

In light of the foregoing, Mr. Lacey moves for an order requiring the government to release the funds held in his Republic Bank accounts 2485 because Mr. Lacey has demonstrated that those funds are unrelated to Backpage and cannot be subjected to pretrial restraint. Further, because that account held only funds unrelated to Backpage, and there are no independent allegations of taint regarding Mr. Lacey's Republic Bank accounts ending in 1897 and 3126, Mr. Lacey respectfully requests that this Court order the government to release all funds held in those accounts as well. Due to the tenuous financial position in which the government has placed Mr. Lacey, Mr. Lacey respectfully requests the accelerated hearing of this motion.

Respectfully submitted,
/s/ Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

Sworn to before me this
10th day of August, 2018.
s/ April Kelly
Commissioner of Deeds
In and For the City of Buffalo, N.Y.
My Commission expires December 31, 2018

9