Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bmkattorneys.com
Kenneth M. Miller, State Bar No. 151874
kmiller@bmkattorneys.com
Anthony R. Bisconti, State Bar No. 269230
tbisconti@bmkattorneys.com
Whitney Z. Bernstein, State Bar No. 304917
wbernstein@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700; Facsimile (949) 369-3701

James C. Grant (*pro hac vice pending*)
jimgrant@dwt.com
Robert Corn-Revere (*pro hac vice pending*)
bobcornrevere@dwt.com
DAVIS WRIGHT & TREMAINE LLP
1201 Third Avenue
Seattle, Washington 98101-30345
Telephone: (206) 757-8096; Fax: (206) 757-7096

Attorneys for James Larkin

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF:<br><br>ANY AND ALL FUNDS HELD IN REPUBLIC BANK OF ARIZONA ACCOUNT(S) XXXX1889, XXXX2592, XXXX1938, XXXX2912, AND, XXXX2500. | No. CV 18-06742-RGK (PJW)<br><br>**NOTICE OF MOTION AND MOTION TO ACCESS AND USE PURPORTEDLY INADVERTENTLY PRODUCED MATERIALS**<br>[Declaration of Paul J. Cambria Proposed to be filed Under Seal]<br><br>Hearing Information<br>Date:  October 22, 2018<br>Time:  9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Place:  Courtroom 850<br>        255 E. Temple Street, 8th Fl.<br>        Los Angeles, CA 90012 |

**TO THE HONORABLE R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE, THE UNITED STATES OF AMERICA AND ITS ATTORNEYS OF RECORD, AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that on October 22, 2018 at 9:00 a.m., or as soon thereafter as counsel may be heard, movant James Larkin will bring on for hearing the following motion for an order providing that he may access and use documents the government produced and now seeks to reclaim and rejecting claims of supposed "inadvertent production."

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the attached Declaration of Paul J. Cambria (the "Cambria Decl.") and exhibits, all matters of which this Court may take judicial notice, and this Court's entire file.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 31, August 1, 10, and 31, and September 7, 12, 17, and 18, 2018.

Concurrent with the filing of this motion, Mr. Larkin is filing an *ex parte* application for an order shortening time so that this Court may consider this motion contemporaneously with its consideration of Mr. Larkin's *Motion to Vacate or Modify Seizure Warrants* (the "Seizure Motion") (Dkt. 6).

Dated:  September 20, 2018

BIENERT, MILLER & KATZMAN, PLC
By: /s/ Thomas H. Bienert
   Thomas H. Bienert
   Kenneth M. Miller
   Anthony R. Bisconti
   Whitney Z. Bernstein
   Attorneys for James Larkin

DAVIS WRIGHT & TREMAINE, LLP
By: /s/ James C. Grant
   James C. Grant
   Robert Corn-Revere
   Attorneys for James Larkin

**Table of Contents**

I.  INTRODUCTION ............................................................................................. 1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 2

    A.  Inspector Versoza's Declarations and the Seizure Warrants. ....................... 2

    B.  The Government's Production of "Released Records" "Mistakenly Withheld" That It Now Seeks to Reclaim. ....................................................... 2

    C.  The Government's Failure to Explain Its Claims of Inadvertent Production. ..................................................................................................... 3

    D.  The Nature of the Disputed Documents. ....................................................... 5

III.  ARGUMENT .................................................................................................. 9

    A.  The Government Breached Its Heightened Obligations of Candor to the Court in the *Ex Parte* Seizure Proceedings. .......................................... 9

    B.  The Government Cannot Use the Work Product Doctrine to Shield the Memos and Other Documents, and Its Misconduct, from Scrutiny. ...................................................................................................... 11

    C.  The Government Has Failed to Establish Any Grounds for Defendants to Return Non-Privileged *Brady*/*Giglio* Materials. ..................... 13

    D.  The Government Has Failed to Establish that the Memos and Other Documents Are Work Product as to which Privilege Has Not Been Waived ........................................................................................................ 13

    E.  The Government Waived Work Product Protections for the Memos and Other Documents by Producing Them to Defendants ........................... 15

    F.  Even if the Memos are Protected as Work Product, Defendants are Entitled to the Memos under Fed. R. Civ. P. 26(b)(3)(A) ............................ 20

    G.  Even if the Memos are Protected as Work Product, Defendants Are Entitled to the Memos Under Brady/Giglio ............................................... 22

IV.  CONCLUSION ............................................................................................. 24

## <u>Table of Authorities</u>

<u>Cases</u>

*Am. Capital Homes, Inc. v. Greenwich Ins. Co.*,
   2010 WL 11561400 (W.D. Wash. Aug. 3, 2010) ................................ 14, 17, 18

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) ......................................................................... 6

*Backpage.com, LLC v. McKenna*,
   881 F. Supp. 2d 1262 (W.D. Wash. 2012) .................................................... 6

*Bozzuto v. Cox, Castle & Nicholson, LLP*,
   255 F.R.D. 673 (C.D. Cal. 2009) ................................................................ 14

*Brady v. Maryland*,
   373 U.S. 83 (1963) ................................................................................ 13, 23

*Campbell v. Rice*,
   408 F.3d 1166 (9th Cir. 2005) .................................................................... 10

*Carter v. Gibbs*,
   909 F.2d 1450 (Fed. Cir.1990) .................................................................... 19

*Dart v. Craigslist, Inc.*,
   665 F. Supp. 2d 961 (N.D. Ill. 2009) ............................................................ 6

*F.T.C. v. Boehringer Ingelheim Pharm., Inc.*,
   778 F.3d 142 (D.C. Cir. 2015) ............................................................... 20, 22

*Franks v. Delaware*,
   438 U.S. 154 (1978) ..................................................................................... 2

*Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*,
   962 F.2d 45 (D.C. Cir. 1992) ...................................................................... 10

*Giglio v. United States*,
   405 U.S. 150 (1972) ................................................................................ 13, 23

*Harmony Gold U.S.A., Inc. v FASA Corp.*,
   169 F.R.D. 113 (N.D. Ill. 1996) .................................................................. 15

*Hickman v. Taylor*,
   329 U.S. 495 (1947) .................................................................................... 20

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
   976 F.2d 573 (9th Cir. 1992) ...................................................................... 21

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
   859 F.2d 1007 (1st Cir. 1988) ..................................................................... 22

*In re Sealed Case*,
   124 F.3d 230 (D.C. Cir. 1997) .................................................................... 22

*In re Sealed Case*,
   676 F.2d 793 (D.C. Cir. 1982) .................................................................... 20

*International Digital Sys. Corp. v. Digital Equip. Corp.*,
   120 F.R.D. 445 (D.Mass.1988) ................................................................... 19

*LabMD, Inc. v. Tiversa Holding Corp.*,
   2015 WL 1213043 (W.D. Pa. March 17, 2015) ............................ 14, 16, 18, 19

*Moody v I.R.S.*,
   654 F.2d 795 (D.C. Cir 1981) ..................................................................... 12

*Parrott v. Wilson*,
   707 F.2d 1262 (11th Cir. 1983) ............................................................. 11, 12

*Swidler & Berlin v. U.S.*,
  524 U.S. 399 (1998).........................................................................................22
*Time Warner Ent. Co., L.P. v. Does Nos. 1-2*,
  876 F. Supp. 407 (E.D.N.Y. 1994) ..............................................................10, 11
*U.S. v. Gangi*,
  1 F. Supp. 2d 256  (S.D.N.Y. 1998) ...................................................................19
*U.S. v. McGraw-Hill Companies, Inc.*,
  2014 WL 8662657 (C.D. Cal. Sept. 25, 2014) .........................................21, 22
*United States v. Aguilar*,
  831 F. Supp. 2d 1180 (C.D. Cal.) .....................................................................24
*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ..............................................................................11
*United States v. Jarrett*,
  No. 1:03-CR-087, 2010 WL 1577670 (N.D. Ind. Apr. 20, 2010) ..............23-24
*United States v. Kohring*,
  637 F.3d 895 (9th Cir. 2011) ...........................................................................23
*United States v. Trabelsi*,
  No. 06-89, 2015 WL 5175882 (E.D.N.Y. Sept. 3, 2015) ................................23
*Van Derheydt v. County of Placer*,
  32 F. App'x. 221 (9th Cir. 2002) .......................................................................10
*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  250 F.R.D. 251 (D. Md. 2008)...........................................................................15

Statutes

18 U.S.C. § 1591 ....................................................................................................9
47 U.S.C. § 230(c) ................................................................................................6

Rules

Fed. R. Civ. P. 11(b)(2).........................................................................................10
Fed. R. Civ. P. 26(b)(3)(A) ..................................................................................20
Fed. R. Civ. P. 26(b)(3)(A)(iii) ...........................................................................20
Fed. R. Evid. 502(b)..............................................................................................14

Other Authorities

ABA Criminal Justice Standards for the Prosecution (4th ed.) § 3-1.4........................10, 12
ABA Criminal Justice Standards for the Prosecution (4th ed.) § 3-3.3..............................10
ABA Model Rules of Professional Conduct, Rule 3.3 .........................................10
*Domestic Minor Sex Trafficking:  Hearing Before Subcomm. on Crime, Terrorism, and*
  *Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 215-16 (2010)
United States Attorney Manual § 9-11.233 .........................................................10

TABLES OF CONTENTS & AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Through the warrants at issue in the Seizure Motion, the government seized a substantial amount of assets belonging to Mr. Larkin, others named as defendants in the government's prosecution in *United States v. Lacey*, No. CR-18-422-PHX-SPL (D. Ariz.)[1] and third parties.  The Seizure Motion challenges the government's numerous seizures on several grounds, including:  a) any pre-conviction seizure of publishing assets or proceeds violates the First Amendment; b) the seizures flouted constitutional requirements for prompt hearings and heightened burdens of governmental proof beyond mere probable cause; and c) even under a probable cause standard, the government's showing was deficient because the affidavits in support of the various warrants were riddled with material misstatements and omissions.  *See* Dkt. 6.

The government recently produced to Defendants documents that are directly relevant to the issues in the Seizure Motion.  The government originally identified these as "Released Records" that it had "mistakenly withheld," but then asserted a month later— after Defendants' counsel had already reviewed and discussed many of these documents— that the documents, comprising approximately 9,745 pages of materials in all, had been "inadvertently produced" (the "Disputed Documents") and tried to claw them back.  For more than six weeks, in an effort to resolve this matter without the Court's intervention, Defendants repeatedly asked the government to explain its position, the circumstances of the production, and how the government could claim to withhold documents and information that apparently had been released to other parties.  The government has evaded these questions, all the while promising that a complete response was forthcoming.  Within the last two days, the government finally provided its promised response, but it too was incomplete and does not justify withholding these documents.

---

[1] Mr. Larkin and the other parties that have joined in the Seizure Motion are referred to here as "Defendants."  (*See* Dkt. Nos. 9, 26, 46 (joinders of John Brunst, Michael Lacey and Scott Spear)).

The Disputed Documents demonstrate that, in seeking the seizure warrants, the government withheld from this Court information materially contradicting key averments made in support of the warrants. The government's claim of "inadvertent production" is improper, especially since the government admits that 98% of the documents are not privileged and says it will produce those documents again, in the future.

By this motion, Mr. Larkin seeks an Order of the Court rejecting the government's claims of supposed "inadvertent production" and permitting Mr. Larkin and the joining parties to access and use the Disputed Documents in connection with the Seizure Motion.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Inspector Versoza's Declarations and the Seizure Warrants.

On March 28, 2018, the government obtained an indictment against Defendants in the District of Arizona (serving the indictment and arresting Defendants a week later). Also on March 28, 2018, the government obtained thirteen civil seizure warrants in this District in an effort to seize a substantial amount of the assets of Mr. Larkin and other Defendants. The government obtained the seizure warrants based on near-identical affidavits from Postal Inspector Lyndon Versoza. *See, e.g.*, Dkt. 6, Thomas Decl. Ex. A ("Versoza Aff.").

The Seizure Motion challenges these and other seizures on constitutional grounds because the seizures violated fundamental principles of the First, Fourth, and Fifth Amendments. The moving parties' challenges include that Versoza's affidavits in support of the warrant applications misstated or omitted material facts and adverse law. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (search warrant obtained through an intentionally or recklessly false affidavit must be voided).

### B. The Government's Production of "Released Records" "Mistakenly Withheld" That It Now Seeks to Reclaim.

On May 24, 2018, the government made its first production of documents to Defendants. *See* Cambria Decl., ¶ 3 and Ex. 1 (May 24, 2018 USAO Letter). On July 2, the government produced additional materials it said were "mistakenly withheld from the government's . . . original disclosure." *Id.* Ex. 2 (July 2, 2018 USAO letter). Defendants

found that the Disputed Documents included numerous exculpatory documents that directly contradicted or seriously undermined the central averments in Versoza's affidavits.  The Disputed Documents show that, when seeking the *ex parte* seizure warrants in this Court, the government failed to disclose critical evidence, as well as controlling law foreclosing the issuance of the seizure warrants.

After being confronted by one defendant's counsel with some of the exculpatory documents, the government asserted on July 27 that it had "inadvertently produced" some documents it previously determined were "mistakenly withheld."  *See Id.* at Ex. 7 (July 27, 2018 USAO email, which made this claim but did not identify the documents).  On July 30, nearly a month after its supplemental production, the government provided a list of 118 "documents" it claimed had been "inadvertently produced."  *Id.* (July 30, 2018 USAO email).  The list identified 9,745 pages, comprising not 118 documents, but likely thousands of documents.[2]   After the government asserted inadvertent production, Defendants segregated the Disputed Documents and did not further review them.  *See id.* at ¶ 7.

## C.   The Government's Failure to Explain Its Claims of Inadvertent Production.

After receiving the clawback request, Defendants inquired about its justification and whether the government asserted that any of the Disputed Documents were privileged.  The

---

[2]  The 118 "documents" identified by the government actually were 118 *files*, including some individual PDF files containing 1,000 pages or more and scores or hundreds of individual documents.   Defendants estimate that the collection of documents the government seeks to reclaim could encompass as many as 2,000-3,000 documents. The Disputed Documents are, generally, documents related to the 2012/2013 grand jury proceedings in the Western District of Washington, documents the government obtained from the National Center for Missing and Exploited Children ("NCMEC"; the national clearinghouse for reporting issues related to the prevention of child victimization), and documents the government otherwise obtained in its investigation, including materials related to Backpage.com's extensive litigation with the government, state and local governments, and private parties (including judicial rulings), witness interviews, and the like.

government identified eight documents it claimed were work product (comprising perhaps 100 of the 9,745 pages) (the "Memos"),[3] but asserted no privileges for the remaining 9,600 pages of documents.  *Id.* Ex. 10 (August 10, 2018 email).  As to these documents, the government asserted it would "re-disclose [them] in the coming months after appropriate privacy redactions and other small changes . . ."  *Id.*  In other words, the government seeks to withhold documents directly bearing on the Seizure Motion until after it is decided.

Defendants then promptly requested additional information from the government to assess its claims of inadvertent production and privilege, but, despite repeated requests and after six weeks' time, the government has provided no answers.  Defendants requested an explanation of how the government came to inadvertently produce nearly 10,000 pages of documents, after multiple stages of review, and what steps the government took to avoid such a wholesale inadvertent production.  Defendants also asked whether the government had disclosed the Disputed Documents or their substance to third parties—which is relevant to the government's efforts to claw back all the Disputed Documents, and particularly relevant to its assertion of work product for the Memos.  Defendants have reason to believe the government has disclosed the Disputed Documents or their substance to third parties, as the government's July 2 production identified all the Disputed Documents as "Released Records," suggesting the government had provided the documents to other parties.  *Id.* at ¶¶ 3, 4 & 7.  To date, the government has provided only incomplete and evasive answers to

---

[3]  The eight documents are memoranda summarizing evidence (and lack of evidence) in the 2012/2013 Western District of Washington grand jury proceedings, attachments to one memo, duplicate copies of the memos, and a related email. Those proceedings ended in January 2013, after the U.S. District Court quashed several grand jury subpoenas issued to Backpage.com (and its parent company at the time). Versoza's affidavits are premised primarily on Backpage.com's practices before January 2013—in other words the same practices and same time period considered in Washington. Although the Arizona grand jury proceedings leading to Defendants' indictment and the applications for seizure warrants in this Court were a continuation of the grand jury proceedings in Washington, Versoza's affidavits to this Court said nothing about the prior rulings or the facts adduced by the government in those proceedings.

Defendants' repeated inquiries. *See id*. at Exs. 7-15. For example, despite repeated requests that the government advise whether it had disclosed the substance of any of the Disputed Documents to any third party, the government has not done so. *See, e.g.*, *id.* at Ex. 15 (September 18, 2018 Letter).[4]

### D. The Nature of the Disputed Documents.

Because the government has claimed inadvertent production, Defendants feel constrained not to use the Disputed Documents in this motion. The motion accordingly does not quote, cite, or disclose the contents of any Disputed Documents. Nonetheless, when considering this motion, the Court should have some understanding of the issues to which the Disputed Documents are pertinent.

Importantly, the government's discussion of those issues in the Disputed Documents does not support—and in many instances directly contradicts—Inspector Versoza's representations to the Court on these issues, including the following:

***Adult Ads Being "Indicative" of Prostitution***. Inspector Versoza repeatedly asserted in his affidavits that, based on his "training and experience," he could determine just from looking at "adult" ads that they are "indicative of" or "consistent with" prostitution and/or "sex trafficking." *See, e.g*., Versoza Aff. ¶¶ 29, 31.c, 32, 33.c.[5] On this basis, Versoza opined that "the majority" or "virtually all" of the ads on Backpage.com in the "adult"

---

[4] In its September 18, 2018 Letter, the government identified another thirteen documents it claimed were work product. This morning, in an email, the government identified yet another document it claims to be work product. *See* Cambria Decl., Ex. 18. The government has given no explanation for its six-week delay in asserting that these fourteen documents, comprising another roughly 130 pages, are work product. (These fourteen documents were immediately adjacent in the production to the eight documents that the government initially claimed were work product.). Even after these two most recent claims of work product, the government has asserted no privilege claim for about 9,500 pages of the Disputed Documents. The term "Memos and Other Documents" will be used to refer collectively to the Memos and the additional fourteen documents the government now claims are work product.

[5] Versoza asserted that he can make these determinations even when ads contained "neutral" or "innocuous" terms and/or based on "sexually provocative pictures," *e.g.*, pictures of "a woman's cleavage" or of a woman "wearing lingerie." *Id.* ¶¶ 31.b, 32.

categories were "actually advertisements promoting trafficking or prostitution." *Id*. ¶¶ 29.c, 32. Versoza did not disclose, however, that courts, in cases concerning Backpage.com, have consistently rejected such assertions as a matter of law, holding that escort and other "adult" ads are legal, that the government may never presume that speech is illegal, and that the opinions of government agents (like Versoza) cannot establish proof of illegality. *See, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("not all advertisements for sex are advertisements for illegal sex"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1282 (W.D. Wash. 2012); Seizure Mot. at 23-24. Defendants believe the government knows, but failed to inform this Court, that it is impossible to conclude just from reading them that third-party adult ads necessarily relate to illegal conduct, whether prostitution, trafficking, or otherwise.

*Backpage.com's Ad Screening and Moderation Practices*. Backpage.com imposed and enforced rules to screen, block, and remove improper or offensive content in third-party ads through automated processes and manual review by upwards of 100 moderators. Versoza's affidavits parroted the accusations of the U.S. Senate Permanent Subcommittee on Investigations ("PSI") that Backpage.com's efforts to screen, prevent, and preclude improper content on its website instead were intended to "sanitize" third-party ads to promote illegal conduct. *Id*. ¶¶ 30, 30.i, 31. Versoza did not mention that such screening for terms or images is common for websites hosting third-party content, and is indicative of website operators' efforts to *prevent* improper or illegal conduct, rather than to *promote* such conduct.[6] *See* 47 U.S.C. § 230(c); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 969 (N.D. Ill. 2009) (sheriff's arguments that Craigslist caused or induced illegal content belied by the website's rules forbidding such content).

*Backpage.com's Evolving Review Practices.* Inspector Versoza's affidavits muddle Backpage.com's review and screening practices, fail to disclose that those practices

---

[6] *See, e.g.*, Facebook pledges to double its 10,000-person safety and security staff by end of 2018 (Oct. 31, 2017), *available at* https://www.cnbc.com/2017/10/31/facebook-senate-testimony-doubling-security-group-to-20000-in-2018.html.

changed significantly over time as Backpage.com enhanced its systems for preventing improper content and misuse of the website, and ignore that most of the practices highlighted in his affidavits had been discontinued years earlier.  For example, Versoza cites Backpage.com's initial efforts in 2010-11 to use automated screening to remove offensive terms and photos from ads as allegedly part of an effort to "maintain its promotion of sex trafficking and prostitution."  *See* Versoza Aff. ¶ 30.  Setting aside the baseless characterizations (as Backpage.com *always* required moderators to delete ads that proposed acts of prostitution or other illegal conduct), Versoza disingenuously suggests in his affidavits that Backpage.com moderators still continued to delete inappropriate text from ads in March 2018.  *See, e.g., id.* ¶ 31.  In fact, Backpage.com's practices changed in 2012, when it revised systems that deleted text from adult ads and instead required moderators to remove ads containing prohibited terms or phrases or other inappropriate text.[7]  The government knows of these changes in moderation practices and Versoza's failure to disclose them misled the Court.  Moreover, Versoza also failed to disclose that Backpage.com moderators and other employees consistently explained that the objectives of the website's moderation efforts were to prevent improper content and misuse of the website.

**Backpage.com's Cooperation with Law Enforcement**.  Inspector Versoza opined that Backpage.com and Defendants sought to facilitate unlawful conduct, but failed to disclose Backpage.com's extensive cooperation with law enforcement.  Backpage.com routinely cooperated with law enforcement officials by reporting suspect ads to NCMEC, responding to subpoenas and other information requests (making it a point to do so within 24 hours, if possible), providing witnesses to testify in criminal prosecutions across the

---

[7]  Versoza described posting a dating ad on Backpage.com in February 2018 and discusses the "adult sections" of the website at the time, Versoza Aff. ¶ 25.a, although the adult categories had been eliminated a month before.  Versoza also conflated moderation standards for dating ads with standards for ads in the former escort category.  *See, e.g.,* Versoza Aff. ¶ 30.c (discussing rules for dating ads, where some nudity and sexual content was permitted).

MEMORANDUM OF POINTS & AUTHORITIES

country (at Backpage.com's expense), promptly removing ads as requested by law enforcement, and conducting independent research to support law enforcement investigations and prosecutions.  The government knows all of this, but said nothing of it in seeking the seizure warrants, as doing so would have significantly undermined the government's theory that Defendants intentionally sought to promote or facilitate unlawful activities.[8]

***Lack of Evidence of Knowledge or Intent.***  The government's warrant applications sought to seize a significant portion of Mr. Larkin's assets (and those of other individual Defendants, such as Michael Lacey), but Inspector Versoza's affidavits are devoid of any allegations or evidence that Mr. Larkin or any other Defendants knew of, were involved with, or participated in any criminal activity by Backpage.com, so as to justify the pre-trial seizure of their assets.  With no evidentiary basis, the Versoza affidavits said only that "all levels of Backpage Management are aware of Backpage's role in promoting criminal activity."   Versoza Aff. at ¶ 29.   Contrary to this vague and unsupported allegation, knowledge by a website's management that some users engage in unlawful activity through the website does not and cannot mean that the site, its management, or its owners are complicit in, or responsible for, the unlawful activity.   The law does not permit the government to prosecute online publishers based on third-party content, absent proof the publisher knew a *specific* ad or post was for unlawful conduct and the publisher affirmatively participated with the individuals who posted that content to violate the laws. *See Domestic Minor Sex Trafficking:  Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 215-16 (2010) (testimony of Francey Hakes, DOJ National Coordinator for Child Exploitation Prevention

---

[8]  Inspector Versoza also failed to mention that Backpage.com's extensive cooperation with law enforcement led to numerous commendations, including from DOJ. *See, e.g.*, Cambria Decl. at Ex. 6 (May 2011 DOJ. certificate of recognition for "outstanding cooperation and assistance" signed by FBI Director Robert Mueller).

MEMORANDUM OF POINTS & AUTHORITIES

and Interdiction).[9]  The government knew this too, but failed to disclose the applicable legal standard and Versoza's affidavits do not even attempt to make a case that the Defendants had the requisite knowledge to be prosecuted based on the publication of third-party content under that standard.

Because there are several thousand Disputed Documents, totaling nearly 10,000 pages, Mr. Larkin is submitting with this motion three exemplar documents, with an accompanying declaration, under seal.[10]  One of the examples is a document the government admits is not privileged in any respect, yet still seeks to claw back.  *See* Cambria Decl., Ex. 5.  The other documents are two of the Memos, which the government asserts are work product.  *See id.* at Exs. 3 & 4.

## III.  ARGUMENT

### A.   The Government Breached Its Heightened Obligations of Candor to the Court in the *Ex Parte* Seizure Proceedings.

This case, which began with Inspector Versoza's *ex parte* affidavits, falls in a portion of federal criminal practice that heavily depends on the candor of government attorneys and agents.  "[I]n an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, *whether*

---

[9]  *Accord* Department of Justice Reply in Support of Motion to Dismiss, *Backpage.com, LLC v. Lynch*, No. 1:15-2155 (RBW) (D.D.C.) (ECF No. 13) ("Even if an advertisement for illegal sex trafficking appeared on [its] website, an operator could not be convicted under [the law] without proving that [it] knew that the advertisement at issue related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion.") (referring to 18 U.S.C. § 1591); Letter of U.S. Assistant AG Stephen Boyd to Rep. Robert Goodlatte (Feb. 27, 2018) ("Section 1591 already sets an appropriately high burden of proof, particularly in cases involving advertising. [P]rosecutors must prove that the defendant knowingly benefitted from participation in a sex trafficking venture, knew that the advertisement related to commercial sex, and knew that the advertisement involved a minor or the use of force, fraud, or coercion."); https://www.congress.gov/amendment/115th-congress/house-amendment/525/text; https://www.eff.org/files/2018/03/19/doj-sesta.pdf.

[10]  *See* Cambria Decl., Exs. 3-5.

---

MEMORANDUM OF POINTS & AUTHORITIES

*or not the facts are adverse*."  *Campbell v. Rice*, 408 F.3d 1166, 1175 (9th Cir. 2005) (quoting ABA Model Rules of Professional Conduct, Rules 3.3(a)(4), 3.3(d) (2002) (emphasis added)).  In this setting, government lawyers have greater obligations than other lawyers.  *See, e.g.*, § 3-1.4, ABA Criminal Justice Standards for the Prosecution (4th ed.) ("The Prosecutor's Heightened Duty of Candor"; "[i]n light of the prosecutor's public responsibilities, broad authority and discretion, the prosecutor has a heightened duty of candor to the courts"); *id.* § 3-3.3 ("Candor Toward The Tribunal"; in *ex parte* communications, "the prosecutor should inform the court of material facts known to the prosecutor, *including facts that are adverse*, sufficient to enable the court to make a fair and informed decision.") (emphasis added).[11]  The DOJ acknowledges its obligations of candor, which are applicable in any criminal prosecution, *see* United States Attorney Manual, § 9-11.233 ("Presentation of Exculpatory Evidence," stating DOJ policy that prosecutors must present to grand juries evidence that directly negates the guilt of a subject of the investigation), but which are all the more important here, where First Amendment issues are at stake.

To meet its obligation, the government was required to disclose all material adverse facts and all applicable law bearing on whether the government was entitled to the seizure warrants.  In presenting papers to the court, government counsel and their agents certify that legal contentions are "warranted by existing law" (or a nonfrivolous argument to extend or modify existing law).  Fed. R. Civ. P. 11(b)(2).  "A court has a right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done the court cannot perform its task properly."  *Van Derheydt v. County of Placer*, 32 F. App'x. 221, 223 (9th Cir. 2002); *see, e.g.*, *Time Warner Ent. Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 415 (E.D.N.Y. 1994) (refusing to issue *ex parte* civil seizure warrants that would have violated defendants' constitutional rights, and criticizing counsel for failing to follow the "well-

---

[11] *See also Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*, 962 F.2d 45, 47 (D.C. Cir. 1992) (the principle that "government lawyers have obligations beyond those of private lawyers . . . appl[ies] with equal force to the government's civil lawyers.").

MEMORANDUM OF POINTS & AUTHORITIES

established rule of professional responsibility" obligating them to inform the court of statutes and case law foreclosing the relief sought). "In an *ex parte* proceeding, in which the adversary system lacks its usual safeguards, the duties on the moving party must be correspondingly greater." *Id* at 415.

As discussed in the Seizure Motion (and here), the government disregarded its obligations of candor when it sought the civil seizure warrants. The government failed to disclose material adverse facts, *e.g.*, regarding *actual* practices of the website, its cooperation with law enforcement, and that neither the website nor anyone else could know that any ad that was lawful on its face would instead result in unlawful conduct. The government also failed to disclose the numerous cases holding that escort ads formerly published on Backpage.com were lawful and constitutionally protected speech and, more generally, that the seizure warrants could not be lawfully issued and executed on the basis asserted by the government. The Disputed Documents demonstrate that the government was aware of both the material adverse facts and the adverse law, but disclosed neither to the Court.

## B.   The Government Cannot Use the Work Product Doctrine to Shield the Memos and Other Documents, and Its Misconduct, from Scrutiny.

The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015). But the privilege under the work product doctrine "is not absolute." *Id*. It "may be overridden if the party that seeks the otherwise protected materials "establish[es] adequate reasons to justify production." *Id*. Because the "purpose of the work product doctrine is to protect the integrity of the adversary process . . . it would be improper to allow an attorney to exploit the privilege for ends that are antithetical to that process." *Id*. (*quoting Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983)).

In *Parrott*, the district court compelled an attorney to produce work product (recorded witness interviews) because of the attorney's misconduct in clandestinely recording those

interviews, which violated applicable ethical rules. *Parrot*, 707 F.2d at 1270-71. The Eleventh Circuit affirmed, holding that "whatever work product privilege might have existed was vitiated by counsel's clandestine recording of conversations with witnesses." *Id.* at 1272.

Similarly, in *Moody*, the government sought to withhold production of a memorandum prepared by an IRS attorney as work product. *Moody v I.R.S.*, 654 F.2d 795, 798-99 (D.C. Cir 1981). Moody moved to compel production, alleging that the memo documented "impermissible legal conduct"—an improper *ex parte* meeting between the IRS lawyer and a judge before whom the lawyer would appear a few days later. Moody argued that it would be a "perversion of the work product doctrine . . . to allow it to be used to 'cover up' activities destructive of [the adversary] system." *Id.* at 799-800. The D.C. Circuit agreed, holding it "would indeed be perverse, as appellant contends, to allow a lawyer to claim an evidentiary privilege to prevent disclosure of work product generated by those very activities the privilege was meant to prevent." *Id.* at 800. The court further held that an "attorney should not be able to exploit the privilege for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends." *Id.*

The Memos demonstrate that the government failed to disclose material adverse facts and that the warrants were not permitted under applicable law, undermining the Court's ability to make a "fair and informed decision." ABA Criminal Justice Standards for the Prosecution § 3-1.4 (4th ed.). To allow the government to shield its actions as work product would be antithetical to the adversary process, particularly in an *ex parte* context, where the Court necessarily must rely on the candor and accuracy of the government's representations.

The Court should review those Memos submitted for *in camera* review and, if it concurs with Defendants' assessment of them, order that the government's breaches of its obligations of candor in seeking and obtaining the seizure warrants vitiate any protections that otherwise would extend to the Memos under the work product doctrine.

**C.     The Government Has Failed to Establish Any Grounds for Defendants to Return Non-Privileged *Brady/Giglio* Materials.**

As noted, the government asserted no privilege claims for some 9,500 pages of the Disputed Documents, yet sought to claw them back nonetheless.   The government acknowledged these materials are subject to production, saying it would provide them "in the coming months," but demanding that Defendants not review or use them because the government might want to make "privacy and other redactions."  Cambria Decl, Ex. 10 (Email dated August 10, 2018).

This is not a proper basis for the government to demand that Defendants return or destroy these documents.  Having produced *Brady/Giglio* materials,[12] the government has no basis to demand the return of those materials—particularly as they are directly pertinent to the pending Seizure Motion.  If the government has concerns about individuals' private information within these records, such concerns can be addressed by confidentiality undertakings between the parties.[13]  The Court should order that the government's claim of inadvertent production does not restrain Defendants' ability to use the roughly 9,500 pages of admittedly non-privileged *Brady/Giglio* materials.

**D.     The Government Has Failed to Establish that the Memos and Other Documents Are Work Product as to which Privilege Has Not Been Waived**

Whether the government's production of the Memos and Other Documents, which it asserts are work product, operates as a waiver of any privilege applicable to the Memos and Other Documents is determined under Rule 502(b) of the Federal Rules of Evidence.  Under

---

[12]  *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

[13]  For example, the government could identify any documents it believes contain an individual's private information, which Defendants would not disclose in the public record or otherwise without allowing the government an opportunity to seek sealing, redaction, or an appropriate protective order. The government has had more than six weeks to identify any such documents.

Rule 502(b), a disclosure of privileged documents results in a waiver unless:   1) the disclosure was inadvertent; 2) the disclosing party took "reasonable steps to prevent disclosure;" and 3) the disclosing party took "reasonable steps to rectify the error." *Am. Capital Homes, Inc. v. Greenwich Ins. Co.*, 2010 WL 11561400, at *2 (W.D. Wash. Aug. 3, 2010); *see also* Fed. R. Evid. 502(b).  As the party asserting that the Memos and Other Documents are protected from disclosure under the work product doctrine, the government has the burden of proving both the applicability of the doctrine and that the government has not waived the qualified privilege.  *See, e.g.*, *Bozzuto v. Cox, Castle & Nicholson, LLP*, 255 F.R.D. 673, 677 (C.D. Cal. 2009).  The disclosing party also has the burden to prove each of the three elements of Rule 502(b). *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, at *3 (W.D. Pa. March 17, 2015).

Defendants' counsel repeatedly asked the government to disclose whether DOJ had disclosed the Disputed Documents (including, in particular, the Memos), or their substance, to any third parties, including other governmental agencies or officials (*e.g.*, the PSI, members of Congress, or state or local agencies or officials) or others (*e.g.*, plaintiffs' lawyers, the media, or any other third parties).  Defendants' counsel also asked the government to explain how the "mistakenly withheld" documents suddenly became "inadvertently produced" documents and what steps the government had taken to prevent an inadvertent production.  To date, the government still has not provided adequate answers to these questions, despite repeated promises to do so.

If the government disclosed some or all of the Memos and Other Documents, or their substance, to any third parties, such disclosures (and the extent of any such disclosures) bear directly on the propriety of the government's work product claim.  *See* Fed. R. Evid. 502(b) (describing criteria for when disclosure operates as waiver).  As the party asserting a claim of privilege, and an inadvertent production, the government has the burden to prove the bases for its claims. To date, the government has utterly failed to do so.

The government has provided various iterations of a privilege log for the Memos and Other Documents, but those logs are insufficient to satisfy the government's burden.  *See*

MEMORANDUM OF POINTS & AUTHORITIES

Cambria Decl., Exs. 16-18.  Among other things, the logs do not address whether the government waived privileges by disclosures.  At this stage, the government may no longer rest on its privilege log but "bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of documents."  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008).  "A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden."  *Id*.  Self-serving assertions that a disclosure of privileged documents was simply inadvertent are insufficient to satisfy the government's burden.  *See Harmony Gold U.S.A., Inc. v FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996).

As the government has wholly failed to meet its burden to establish it has not waived work product protections for the Memos and Other Documents, the Court should order that the government's claim of inadvertent production does not restrain Defendants' ability to use the Memos.

### E.     The Government Waived Work Product Protections for the Memos and Other Documents by Producing Them to Defendants

Here, the government has fallen far short of meeting its burden under Rule 502(b).  An analysis of each of the relevant Rule 502(b) factors leads to the conclusion that the government waived any claim of work-product protection.

***Circumstances Suggest Intentional Disclosure***:     Defendants question the government's assertion that its production of the Disputed Documents was inadvertent—as opposed to a shift in strategy after the government learned that Defendants located the documents before the hearing on the Seizure Motion.[14]  The Disputed Documents were produced after multiple reviews, identified as having been "mistakenly withheld," and labeled (along with another 160,000 pages of documents) as "Released Records."  And,

---

[14]  The government's supplemental production was approximately 170,000 pages, but the initial production approached 10,000,000 pages.

MEMORANDUM OF POINTS & AUTHORITIES

after all, the government acknowledges it ultimately will have to produce at least 9,500 of the 9,745 pages of the Disputed Documents.  It is difficult to fathom how the government could have overlooked nearly 10,000 pages of documents that purportedly were not supposed to be in the production.  The government's failure to provide credible evidence to support its claim that the production was inadvertent, rather than a post-disclosure change in strategy, warrants a finding that any privilege otherwise applicable to the Memos and Other Documents was waived.  *LabMD*, 2015 WL 1213043, at *4 (finding waiver where disclosing party "present[ed] no evidence to support its claim that filing the documents with the Court was inadvertent and not the result of a post-filing change in strategy").

***The Absence of Reasonable Steps to Prevent Disclosure***:  The government also has provided no evidence from which the Court can conclude that the government took "reasonable steps to prevent disclosure" of the Disputed Documents.[15]  The government simply states that "a technology support specialist" placed the Disputed Documents into a production folder before the prosecution team reviewed them.  *See* Cambria Decl., Ex. 15, at 3.  Based on the government's explanation (casting blame at clerical staff), it appears that the government took *no steps*—let alone reasonable steps—to prevent a purported inadvertent disclosure.  As the government has failed to provide any information, much less credible evidence, of how the disclosure occurred and why its efforts to prevent the disclosure were reasonable, the Court should find that the government has waived any privilege otherwise applicable to the Memos and Other Documents.

"To decide whether a party took reasonable steps to prevent disclosure, courts in the Ninth Circuit and elsewhere have employed a set of five factors: the reasonableness of

---

[15]  When assessing the reasonableness of the government's actions, the Court must assess those actions in relation to the nearly 10,000 pages of Disputed Documents, not just the 225 or so pages of Memos and Other Documents. The government contends that the production of the entire 10,000 pages was inadvertent and, therefore, its actions must be judged in relation to the entirety of the inadvertent production—not just those documents as to which the government now asserts a privilege.

MEMORANDUM OF POINTS & AUTHORITIES

precautions taken, the time taken to rectify the error,[16] the scope of discovery, the extent of disclosure and the overriding issue of fairness." *Am. Capital Homes*, 2010 WL 11561400, at \*2. "The reasonableness of the steps taken by the producing party must be judged by the standards of customary practice in the legal profession, not with the 20-20 vision of hindsight." *Id.*

Given the sheer enormity of the government's claimed inadvertent production—perhaps several thousand documents, comprising nearly 10,000 pages, produced in one contiguous block—the government cannot plausibly claim it took reasonable steps to avoid an inadvertent production. Even a cursory of spot check of the production set would have disclosed the presence of the Disputed Documents in the production, as the purportedly inadvertently produced documents were over *five percent of the entire supplemental production*. And, even without reviewing a single document, any reasonable level of diligence would have made clear that the Disputed Documents were in the supplemental production, as all the Disputed Documents were identified as coming from custodians whose documents the government now says should not have been in the production set. The government's September 18 letter does not identify *any* precautions it took to prevent inadvertent disclosure.

Moreover, the government should have been particularly vigilant in its oversight of the supplemental production—as the government made the supplemental production to correct a major error in the initial production. If the government actually made a major error (an inadvertent production) while attempting to correct a major error (a deficient

---

[16]  The government waited until August 8, 2018, to provide the first iteration of its privilege log—which identified only 8 documents. *See* Cambria Decl., at Ex. 16. More than a month later, the government provided revised privilege logs identifying fourteen more documents as work product, with no explanation for the delay. (The fourteen additional documents were immediately adjacent in the production to the eight documents initially claimed as privileged.) The government's efforts to rectify the purported inadvertent production have thus been far from reasonable (and the government's demand for the return of the entirety of the July 2 production cannot absolve the government's subsequent inattention to protecting its work product).

---

17

production), its oversight of the later production surely was not reasonable in relation to the "customary practice in the legal profession." *Id*. (finding the plaintiff's actions were unreasonable where the errors in its first round of production were followed by errors in its second round of production, which errors "could have been avoided if an attorney familiar with the documents had conducted the final quality control").

   ***The "Extent of Disclosure" Weighs Heavily in Favor of Waiver:*** Defendants were in possession of the Disputed Documents, including the Memos and Other Documents, for nearly one month before the government sought to claw them back. Defendants and their counsel extensively reviewed and discussed the Memos during that time. As such, the "extent of disclosure" of the Memos was both comprehensive and complete. Although courts in the Ninth Circuit and elsewhere consider several factors when evaluating whether an inadvertent production effects a waiver, the "extent of the disclosure factor" can, by itself, be "dispositive." *LabMD,* 2015 WL 1213043, at *6. In *LabMD*, the disclosing party attached what was claimed to be work product to a court filing, which put the document in the hands of at least two of its opponents. *Id*. at 7. The Court in *LabMD* held that "the voluntary and complete disclosure of the original RICO statement on the public docket and

to at least two Defendants weighs 'most heavily' in favor of finding waiver." *Id*.[17]  Here, whether inadvertent or not, the government made a voluntary and complete disclosure of the Memos and Other Documents to *all* Defendants, all of whom read (and re-read) the key Memos.  That bell cannot be unrung, and no order can erase the knowledge that Defendants and their counsel now have of the Memos and Other Documents.  Those indisputable facts weigh most heavily in favor of finding waiver.

Finally, with respect to fairness, the Court should not permit the government to claw back and attempt to bury information that contradicts the basis on which the government obtained the seizure warrants, its theory of prosecution, and the misleading picture it seeks to paint to support the prosecution.  Allowing the government to bury the Memos and Other Documents would be grossly unfair to Defendants—particularly as the government seeks to smother their ability to defend themselves by seizing their assets in *ex parte* proceedings, using novel theories and cherry-picking facts, out of context.

---

[17]  When analyzing the "extent of disclosure" factor, the court in *LabMD* relied heavily on *Carter v. Gibbs*, 909 F.2d 1450 (Fed. Cir.1990), and *U.S. v. Gangi*, 1 F. Supp. 2d 256 (S.D.N.Y. 1998), each holding DOJ waived privilege by producing an internal memorandum to its adversaries.  *Carter*, 909 F.2d at 1451 ("It is irrelevant whether the attachment was inadvertent, as the government alleges. Voluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege . . . . Granting the motion would do no more than seal the bag from which the cat has already escaped."); *Gangi*, 1 F. Supp. 2d at 267 ("It is well-established that 'work product protection is waived when protected materials are disclosed in a manner which ... 'substantially increases the opportunity for a potential adversary to obtain the protected information.'' Here, there is little doubt that the Government's voluntary disclosure of the Prosecution Memorandum, however inadvertent, has substantially increased the opportunity for defendants to procure it.  Counsel for two defendants already have seen it. *See International Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449 (D.Mass.1988) ('There is no order I can enter which erases from defendant's counsel's knowledge what has been disclosed.'). Thus, the purpose of the work product doctrine, that 'opposing counsel should not enjoy free access to an attorney's thought processes,' has already been severely undermined.'") (other internal citations omitted)).

**F.    Even if the Memos are Protected as Work Product, Defendants are Entitled to the Memos under Fed. R. Civ. P. 26(b)(3)(A)**

Work product is not generally subject to discovery in civil litigation, but a party may obtain discovery of work product upon a showing that the party has "substantial need for the materials to prepare its case" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). "[T]o the extent that work product contains relevant, nonprivileged *facts*, the work product doctrine merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show adequate reasons why the work product should be subject to discovery." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015) (emphasis in original) (*quoting In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) (*quoting Hickman v. Taylor*, 329 U.S. 495, 512 (1947)). A party also may discover opinion work product, but that requires an "extraordinary showing of necessity." *Id.*

The "adequate reasons" test corresponds to Rule 26(b)(3)'s requirement that a party seeking factual work product demonstrate substantial need and an inability to obtain the substantial equivalent by other means. *Boehringer*, 778 F.3d at 153; *see also* Fed. R. Civ. P. 26(b)(3)(A)(iii). A moving party generally meets its burden by demonstrating: the materials are relevant to the case; the materials have a unique value apart from those already in the movant's possession; and "special circumstances" excuse the movant's failure to obtain the requested materials itself. *Boehringer*, 778 F.3d at 155 (citations omitted). Showing "special circumstances" is not a heavy burden. *See id.* For example, courts have found special circumstances if information available in an accident report was not available elsewhere and where parties sought discovery of witness statements, but the witnesses refused to be interviewed, or had lapses of memory, or deviated from prior statements. *Id.* at 155-56. There is no requirement that the work product sought be essential to a claim or probative of a critical element. *Id.* "Hickman instructed that fact work product that is unavailable elsewhere may be discovered if it is admissible or could 'give clues as to the existence or location of relevant facts' . . . ." *Id.* at 156.

The standard applicable to opinion work product is higher than for fact work product. Opinion work product is "an attorney's mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation." *U.S. v. McGraw-Hill Companies, Inc*., 2014 WL 8662657, at *5 (C.D. Cal. Sept. 25, 2014). "Opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573, 577 (9th Cir. 1992). Although a party seeking opinion work product must make a stronger showing of necessity and unavailability than for ordinary work product, courts have allowed the discovery of opinion work product in situations like this "where the prosecutor's intent or motivation is put at issue." *McGraw-Hill*, 2014 WL 8662657, at *6 (plaintiff's selective prosecution claims justified compelling the production of the opinion work product of the United States).

Here, the Memos contain factual information for which Defendants have substantial need and the information is not readily available elsewhere. The Memos contain some facts that Defendants could prove by other means, but Defendants' challenges to the seizure warrants are not premised on the mere existence of facts contrary to those alleged in Versoza's affidavits. Rather, the Memos are critical because they prove both the existence of facts contrary to those alleged in Versoza's affidavits *and* that the government knew those facts and understood their importance when it sought the seizure warrants—yet did not disclose those facts to the Court. Mr. Larkin thus demonstrates a substantial need for the factual portions of the Memos under Fed. R. Civ. P. 26(b)(3)(A), and an inability to obtain the information elsewhere. As such, the Court should order that Defendants are entitled to the factual portions of the Memos.

To the extent the Memos contain opinion work product, Defendants also have a compelling need for that information. Defendants have asked this Court to quash numerous civil seizure warrants and to return all their seized assets to them. For some of the arguments Defendants have advanced in the Seizure Motion, the state of mind, intent, and motivation of the government and its actors could play a significant role in the remedy the

Court fashions for the government's transgressions.   As such, the prosecution's understanding of the facts and law when it sought the seizure warrants are squarely at issue in this case and Defendants have a compelling need for proof of what the government knew. Defendants are unlikely to find equivalent information elsewhere.  *See McGraw-Hill*, 2014 WL 8662657, at *6 (ordering production of both ordinary work product and opinion work product in a suit involving selective prosecution claims, as "the materials [we]re communications within the U.S. Department of Justice" and "it would likely be impossible to obtain equivalent materials from any other source").

If the Court determines Defendants are entitled to fact work product, but not opinion work product, the court will need to reexamine the Memos to identify the factual matters that may be disclosed without revealing attorney opinions.  *Boehringer*, 778 F.3d at 152. "Not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product."  *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988).  For example, in *In re Sealed Case*, the D.C. Circuit held that attorney notes of preliminary interviews with a witness were not necessarily opinion work product, as the mere fact that an attorney chose to write down a fact was insufficient to convert that fact into opinion work product.  *In re Sealed Case*, 124 F.3d 230, 235-36 (D.C. Cir. 1997), *rev'd on other grounds sub nom. Swidler & Berlin v. U.S.*, 524 U.S. 399 (1998).   After the D.C. Circuit reviewed the challenged documents *in camera* and concluded that the information "could be classified as opinion [work product] only on a virtually omnivorous view of the term," the court remanded to the district court for a reexamination of the documents.  *Id.* at 236-37.

## G.   Even if the Memos are Protected as Work Product, Defendants Are Entitled to the Memos Under Brady/Giglio

Regardless of whether the Memos otherwise would be protected from disclosure as work product, the government will be compelled to disclose the Memos during the related criminal proceedings as *Brady/Giglio* materials.  The prosecution's "suppression . . . of evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The type of evidence "favorable to the accused" that must be disclosed includes evidence that impeaches a witness's credibility.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  The Memos both prove the existence of facts contrary to those alleged in Versoza's affidavits and impeach Versoza's credibility.

Because the Constitution imposes this disclosure obligation, it overrides court-made rules of procedure that otherwise might curtail the discovery or disclosure of work product. "In general, a prosecutor's opinions and mental impressions" are not discoverable, but the government must disclose them to the extent "they contain underlying exculpatory facts." *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011) (internal quotation marks and citation omitted).

This rule from *Kohring* is not surprising, given that notes of prosecutors and investigators can be a critical source of exculpatory and impeachment information.  In *Kohring*, the court found that a "government attorney's handwritten notes," "[h]andwritten notes by the prosecutor," and an "e-mail exchanged among the prosecution team" all provided evidence that a government witness had "difficulty remembering key facts" and had a compromised "character for truthfulness."  637 F.3d at 904-05.  The court held that, even if the government did not have to disclose the work-product internal email and handwritten notes in their entirety, "it did have a duty to disclose the non-cumulative 'underlying exculpatory facts' in the e-mail" and notes.  *Id.* at 908.

Although opinion work product generally is not discoverable under *Brady*/*Giglio*, if pure "opinion" work product may reveal government misrepresentations that put the government's charges in doubt, the work product doctrine "cannot shield what would otherwise be *Brady* material."  *United States v. Trabelsi*, No. 06-89, 2015 WL 5175882, at *5 (E.D.N.Y. Sept. 3, 2015) (holding that the "privilege" to withhold opinion work product "must give way" when it could show government misrepresentations and misconduct that "might warrant dismissal of the . . . indictment"); *see also United States v. Jarrett*, No. 1:03-

23

MEMORANDUM OF POINTS & AUTHORITIES

CR-087, 2010 WL 1577670, at *4 (N.D. Ind. Apr. 20, 2010) (holding that privileges could not justify withholding internal government documents in a vindictive prosecution case because, among other reasons, the privilege "must be overridden . . . where the sole way for defendant to prove his allegation of government misconduct" is through internal government memoranda).  Here, the government's serious breaches of its obligations of candor to this Court in seeking the *ex parte* seizure warrants justify the production of pure opinion work product to Defendants.

Under these principles, the government is (or will be) obligated disclose the Memos in the pending criminal proceeding.  Defendants' counsel have not yet used the information in the Memos, nor will they refer any specific contents of the Memos before the Court compels their unrestricted disclosure, but the Memos are replete with exculpatory facts, information that impeaches Versoza's affidavits, and statements of the pertinent law adverse to the issuance of the warrants[18]—all of which go to the very heart of the government's seizures (as well as putting the charges and the indictment in serious doubt). *See United States v. Aguilar*, 831 F. Supp. 2d 1180, 1202 (C.D. Cal.) (noting that "facts demonstrating a skewed or biased investigation may constitute Brady material" and holding that government improperly withheld government agent's misleading grand jury testimony).

## IV.   CONCLUSION

The government has no basis to block Defendant's use of any non-privileged Disputed Documents in these proceedings.  The government also has failed to meet its

---

[18] Defendants recall the factual discussion in the Memos being bound up with the discussion of the state of the law, such that the factual portion, and much of the legal portion, of the Memos would be required to be disclosed under *Kohring*. Even if Defendants' recollections are incorrect, however, DOJ has publicly disclosed its views of the key legal standards discussed in the Memos, so there is no reason under *Kohring* to withhold those portions of the Memos on work product grounds.  Because identifying the public materials here would identify, at least to some extent, the content of the Memos, Defendants will identify the public materials to the Court upon request.

MEMORANDUM OF POINTS & AUTHORITIES

burden to establish that it has not waived any work product protections otherwise applicable to the Memos and Other Documents, whether by disclosing them to third parties or by producing them to Defendants.  Regardless, the government cannot use the work product doctrine to cover up its misconduct in seeking and obtaining the seizure warrants.  Alternatively, Defendants are entitled to the Memos under Fed. R. Civ. Pro. 26(b)(3)(A) and under *Brady*/*Giglio*.  Therefore, the Court should order that Defendants can access all the Disputed Documents, notwithstanding the government's claim of inadvertent production, and use those documents in connection with the Seizure Motion.

Dated:  September 20, 2018

BIENERT, MILLER & KATZMAN, PLC
By: /s/ Thomas H. Bienert
    Thomas H. Bienert
    Kenneth M. Miller
    Anthony R. Bisconti
    Whitney Z. Bernstein
    Attorneys for James Larkin

DAVIS WRIGHT & TREMAINE, LLP
By: /s/ James C. Grant
    James C. Grant
    Robert Corn-Revere
    Attorneys for James Larkin

MEMORANDUM OF POINTS & AUTHORITIES

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673.  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      On September 20, 2018, I served the following document described as NOTICE OF MOTION AND MOTION TO ACCESS AND USE PURPORTEDLY INADVERTENTLY PRODUCED MATERIALS  on all interested parties in this action as stated on the attached service list:

[   ]  **BY MAIL** - I deposited such envelope in the mail at San Clemente, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Clemente, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[   ]  **BY PERSONAL SERVICE** - I caused such envelope to be delivered by a process server employed by   Name of process service company  .

[X]  **BY ELECTRONIC TRANSMISSION** - I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) indicated.

[   ]  **BY OVERNIGHT DELIVERY** - I deposited such envelope for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.  I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by   Name of Company  .  They are deposited with a facility regularly maintained by   Name of Company   for receipt on the same day in the ordinary course of business.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on September 20, 2018, at San Clemente, California.


                        /s/ Carolyn K. Howland
                        Carolyn K. Howland

<u>SERVICE LIST</u>

*IN THE MATTER OF THE SEIZURE OF: ANY AND ALL FUNDS HELD IN REPUBLIC BANK OF ARIZONA ACCOUNT(S) XXXX1889, XXXX2592, XXXX1938, XXXX2912, AND XXXX2500*

Central District of California – Case No. CV 18-06742-RGK (PJW)

•Whitney Z Bernstein
wbernstein@bmkattorneys.com,4579179420@filings.docketbird.com

•Thomas H Bienert , Jr
tbienert@bmkattorneys.com,4579179420@filings.docketbird.com,admin@bmkattorneys.com

•Anthony R Bisconti
tbisconti@bmkattorneys.com,4579179420@filings.docketbird.com,admin@bmkattorneys.com

•Paul J Cambria , Jr
pcambria@lglaw.com,kdrewery@lglaw.com,akelly@lglaw.com,gpelletterie@lglaw.com,emccampbell@lglaw.com

•Scott R Commerson
scottcommerson@dwt.com,laxdocket@dwt.com,myraizzo@dwt.com

•Janey Henze Cook
janey@henzecookmurphy.com

•Robert Corn-Revere
bobcornrevere@dwt.com,carolkaltenbaugh@dwt.com,WDCDocket@dwt.com

•Bruce S Feder
bf@federlawpa.com,fl@federlawpa.com

•John Kucera
john.kucera@usdoj.gov,USACAC.Criminal@usdoj.gov,krystie.sor@usdoj.gov,CaseView.ECF@usdoj.gov,shannen.beckman@usdoj.gov,deena.bowman@usdoj.gov

•Gary S Lincenberg
gsl@birdmarella.com,kjf@birdmarella.com,docket@birdmarella.com

•Erin E McCampbell
emccampbell@lglaw.com

•Kenneth M Miller
kmiller@bmkattorneys.com,4579179420@filings.docketbird.com,

admin@bmkattorneys.com

•Ariel A Neuman
aan@birdmarella.com,brl@birdmarella.com,aneuman@birdmarella.com,rec@birdmarella.com

•Gopi K Panchapakesan
gkp@birdmarella.com,kmm@birdmarella.com

•John K Rubiner
jrubiner@bkolaw.com,lbarney@bkolaw.com