Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bmkattorneys.com
Kenneth M. Miller, State Bar No. 151874
kmiller@bmkattorneys.com
Anthony R. Bisconti, State Bar No. 269230
tbisconti@bmkattorneys.com
Whitney Z. Bernstein, State Bar No. 304917
wbernstein@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700; Facsimile (949) 369-3701

James C. Grant
jimgrant@dwt.com
Robert Corn-Revere
bobcornrevere@dwt.com
DAVIS WRIGHT & TREMAINE LLP
1201 Third Avenue
Seattle, Washington 98101-30345
Telephone: (206) 757-8096; Fax: (206) 757-7096

Attorneys for James Larkin

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF:**<br><br>ANY AND ALL FUNDS HELD IN REPUBLIC BANK OF ARIZONA ACCOUNT(S) XXXX1889, XXXX2592, XXXX1938, XXXX2912, AND, XXXX2500. | No. 18-CV-06742-RGK (PJW)<br><br>**NOTICE OF MOTION AND MOTION TO ACCESS AND USE PURPORTEDLY INADVERTENTLY PRODUCED MATERIALS**<br><br>Hearing Information<br>Date: October 29, 2018<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Place: Courtroom 850<br>255 E. Temple Street, 8th Fl.<br>Los Angeles, CA 90012 |

**TO THE HONORABLE R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE, THE UNITED STATES OF AMERICA AND ITS ATTORNEYS OF RECORD, AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that on October 29, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, movant James Larkin will bring on for hearing the following motion for an order providing that he may access and use documents the government previously produced, but now seeks to reclaim, and rejecting claims of supposed "inadvertent production."[1]

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Paul J. Cambria ("Cambria Decl.") and exhibits, all matters of which this Court may take judicial notice, and the pleadings and files herein.

This motion is made following communications and conferences of counsel pursuant to L.R. 7-3 which took place on July 31, August 1, 10, and 31, and September 7, 12, 17, and 18, 2018.

Dated: September 25, 2018          BIENERT, MILLER & KATZMAN, PLC

By: */s/ Thomas H. Bienert*
    Thomas H. Bienert
    Kenneth M. Miller
    Anthony R. Bisconti
    Whitney Z. Bernstein
    Attorneys for James Larkin

DAVIS WRIGHT & TREMAINE, LLP
By: */s/ James C. Grant*
    James C. Grant
    Robert Corn-Revere
    Attorneys for James Larkin

---

[1] A prior version of this motion was filed on September 20, 2018. *See* Dkt. 50. The Court subsequently entered an order striking that filing for exceeding the Court's page limit. *See* Dkt. 64. This motion therefore is intended to replace the stricken motion. The following submissions, filed September 20, 2018, relate to this motion: Dkt. 60 (Application to file Declaration of Paul J. Cambria Under Seal); Dkt. 61 (Sealed Declaration); and Dkt. 62 (Ex Parte Application).

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .........................2

    A.   Versoza's Declarations and the Seizure Warrants ....................................2

    B.   The Government's Production of "Released Records" "Mistakenly
        Withheld" That It Now Seeks to Reclaim..................................................2

    C.   The Government's Failure to Explain Its Inadvertent Production ..............3

    D.   The Nature of the Disputed Documents ....................................................4

III.  ARGUMENT............................................................................................................7

    A.   The Government Breached Its Obligations of Candor...............................7

    B.   The Work Product Doctrine Cannot Be Used To Shield Misconduct ...............8

    C.   The Government Waived Work Product Privilege By Producing the
        Memos & Drafts to Defendants  .............................................................10

    D.   The Government Has Failed to Prove It Did Not Waive Any
        Privilege By Disclosing the Memos & Drafts, Or Their Substance, to
        Third Parties............................................................................................15

    E.   Defendants are Entitled to the Memos under Fed. R. Civ. P.
        26(b)(3)(A)..............................................................................................15

        1.    Access Under Fed. R. Civ. P. 26(b)(3)(A)...................................15

        2.    Acess Under *Brady/Giglio*.........................................................17

IV.   CONCLUSION.......................................................................................................19

i

# TABLE OF AUTHORITIES

Cases

*Am. Capital Homes, Inc. v. Greenwich Ins. Co.*,
  2010 WL 11561400 (W.D. Wash. Aug. 3, 2010) ........................................ 10, 12, 13

*Backpage.com, LLC v. Dart*,
  807 F.3d 229 (7th Cir. 2015) ........................................................................ 5

*Backpage.com, LLC v. McKenna*,
  881 F. Supp. 2d 1262 (W.D. Wash. 2012) .................................................... 5

*Bozzuto v. Cox, Castle & Nicholson, LLP*,
  255 F.R.D. 673 (C.D. Cal. 2009) ................................................................ 10

*Brady v. Maryland*,
  373 U.S. 83 (1963) ...................................................................................... 11

*Campbell v. Rice*,
  408 F.3d 1166 (9th Cir. 2005) ...................................................................... 7

*Carter v. Gibbs*,
  909 F.2d 1450 (Fed. Cir.1990) ................................................................... 14

*Dart v. Craigslist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ............................................................ 5

*F.T.C. v. Boehringer Ingelheim Pharm., Inc.*,
  778 F.3d 142 (D.C. Cir. 2015) .................................................................... 16

*Franks v. Delaware*,
  438 U.S. 154 (1978) ...................................................................................... 2

*Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*,
  962 F.2d 45 (D.C. Cir. 1992) ........................................................................ 7

*Giglio v. United States*,
  405 U.S. 150 (1972) ................................................................................ 11, 18

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
  976 F.2d 573 (9th Cir. 1992) ...................................................................... 16

*In re EchoStar Commc'ns Corp.*,
  484 F.3d 1294 (Fed Cir. 2006) ................................................................... 14

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
  859 F.2d 1007 (1st Cir. 1988) .................................................................... 17

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ...................................................................... 9

*Int'l Digital Sys. Corp. v. Digital Equip. Corp.*,
  120 F.R.D. 445 (D. Mass.1988) .................................................................. 14

*LabMD, Inc. v. Tiversa Holding Corp.*,
  2015 WL 1213043 (W.D. Pa. March 17, 2015) ............................. 10, 12, 13, 14

*Moody v I.R.S.*,
  654 F.2d 795 (D.C. Cir 1981) ....................................................................... 9

*Parrott v. Wilson*,
  707 F.2d 1262 (11th Cir. 1983) .................................................................... 9

*Time Warner Ent. Co., L.P. v. Does Nos. 1-2*,
  876 F. Supp. 407 (E.D.N.Y. 1994) ............................................................... 8

*United States v. Gangi*,
  1 F. Supp. 2d 256 (S.D.N.Y. 1998) ........................................................ 14, 9

*United States v. McGraw-Hill Co., Inc.*,
  2014 WL 8662657 (C.D. Cal. Sept. 25, 2014)...............................16, 17
*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015)...............................................8, 9
*United States v. Jarrett*,
  No. 1:03-CR-087, 2010 WL 1577670 (N.D. Ind. Apr. 20, 2010) ...........9
*United States v. Kohring*,
  637 F.3d 895 (9th Cir. 2011)..................................................18
*Van Derheydt v. County of Placer*,
  32 F. App'x. 221 (9th Cir. 2002) ............................................8
*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  250 F.R.D. 251 (D. Md. 2008)................................................11

<u>Statutes</u>

47 U.S.C. § 230(c) ................................................................5

<u>Rules</u>

Fed. R. Civ. P. 11(b)(2) ...........................................................8
Fed. R. Civ. P. 26(b)(3)(A)........................................................16
Fed. R. Evid. 502(b) ..............................................................15

<u>Other Authorities</u>

ABA Criminal Justice Standards for the Prosecution § 3-1.4 (4th ed.) ...................7, 9
ABA Criminal Justice Standards for the Prosecution § 3-3.3 (4th ed.) ...................7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Through the warrants at issue in the Seizure Motion, the government seized substantial assets belonging to Mr. Larkin, other defendants in *United States v. Lacey*, No. 18-CR-422-PHX-SPL (D. Ariz.),[2] and third parties.  The Seizure Motion challenges the government's seizures on several grounds, including that the government's showing was deficient because the supporting affidavits were rife with material misstatements and omissions.  Dkt. 6.

The government recently produced documents directly relevant to the issues of misstatements and omissions set forth in the Seizure Motion.  The documents demonstrate that, in seeking the seizure warrants, the government withheld from this Court information materially contradicting key averments made in support of the warrants.  The government initially identified the documents as "mistakenly withheld" "Released Records," but later claimed the 9,745 pages of material had been "inadvertently produced" and tried to claw them back (the "Disputed Documents").

Defendants repeatedly asked the government to explain its position, the circumstances of the production, and how the government could claim to withhold documents that apparently had been released to other parties.  For more than six weeks, the government evaded those questions, while promising a more complete response.  The government provided its long-promised response last week, but it too was incomplete and did not justify clawing back the Disputed Documents.  The government's claim of "inadvertent production" is improper, especially since it admits that 98% of the Disputed Documents are not privileged and will be produced to Defendants in the future.

By this motion, Mr. Larkin seeks an Order rejecting the government's claim of supposed "inadvertent production" and permitting Defendants to access and use the Disputed Documents for all purposes.  Moreover, for the reasons set forth in the Seizure Motion, the Court should grant that motion on the papers; but if the Court is weighing evidence to

---

[2] Mr. Larkin and the other parties who have joined herein are referred to as "Defendants."

determine whether Defendants have made the requisite showing that they are entitled to the relief requested in the Seizure Motion, the Court should be able to review and consider the Disputed Documents in making that determination.  And if the court does not immediately vacate the seizures and instead concludes an evidentiary "*Franks* hearing" is necessary to address the government's material misstatements and omissions, Defendants should be permitted to introduce the Disputed Documents at that hearing.[3]  Accordingly, this motion should be granted.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   Versoza's Declarations and the Seizure Warrants

On March 28, 2018, the government obtained 13 civil seizure warrants in this District in an extensive effort to seize Mr. Larkin's and other Defendants' assets.  The government obtained the seizure warrants based on near-identical affidavits from Postal Inspector Lyndon Versoza. *E.g.*, Dkt. 6, Thomas Decl. Ex. A ("Versoza Aff.").  The Seizure Motion challenges these seizures (and others obtained later) as violating fundamental principles of the First, Fourth, and Fifth Amendments, including that Versoza's affidavits misstated or omitted material facts and adverse law.  *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (search warrant obtained through an intentionally or recklessly false affidavit must be voided).

### B.   The Government's Production of "Released Records" "Mistakenly Withheld" That It Now Seeks to Reclaim

The government made its first production of documents to Defendants on May 24, 2018.  Cambria Decl., ¶ 3; Ex. 1.  On July 2, the government produced additional materials it said had been "mistakenly withheld from the . . . original disclosure." *Id.* at Ex. 2.  In reviewing the Disputed Documents, Defendants found numerous exculpatory documents directly contradicting or seriously undermining the core averments in Versoza's affidavits.  These documents show that, in seeking the *ex parte* seizure warrants, the government failed to disclose

---

[3] As set forth in the Motion to Vacate (Dkt. 6), the court should immediately vacate the seizures and order Movants' properties returned to them, and the court need only hold an evidentiary hearing to address the government's misleading the Court in the alternative.

to this Court both critical evidence and controlling law foreclosing issuance of the warrants.

After being confronted with some of these exculpatory documents, the government asserted on July 27 it had "inadvertently produced" some of the "mistakenly withheld" documents, but did not identify the documents. *Id.* at Ex. 7. On July 30, nearly a month after its supplemental production, the government listed 118 "documents" it claimed had been "inadvertently produced." *Id.* The list identified 9,745 pages, comprising not 118 documents, but likely thousands of documents.[4] Based on the government's claims, Defendants segregated and stopped reviewing the Disputed Documents. *Id.* at ¶ 7.

### C. The Government's Failure to Explain Its Inadvertent Production

After receiving the clawback request, Defendants inquired about the government's justification and whether it claimed any of the Disputed Documents were privileged. The government subsequently identified 8 documents as claimed work product (perhaps 100 of the 9,745 pages). The 8 documents are from federal grand jury proceedings in the Western District of Washington in 2012/2013 involving Backpage.com (and its former parent company, which is owned by Defendants). The 8 documents are several memos summarizing evidence (and lack of evidence) and the state of the law, attachments to one memo, duplicate copies of the memos, and a related email (the "Memos").[5] The government asserted no privileges for the remaining 9,600+ pages of documents, which it said it would "re-disclose in the coming

---

[4] The 118 "documents" actually were 118 *files*, including individual PDF files with 1,000 pages or more and scores or hundreds of documents. Defendants estimate the government seeks to reclaim as many as 2,000-3,000 documents. The Disputed Documents are from federal grand jury proceedings in the Western District of Washington in 2012/2013; Backpage.com's extensive litigation with federal, state and local governments, and private parties; and the government's investigation, including documents from the National Center for Missing and Exploited Children ("NCMEC," the national clearinghouse for reporting issues related to the prevention of child victimization), witness interviews and the like.

[5] The Washington grand jury proceedings ended after the court quashed subpoenas issued to Backpage.com (and its then parent). Versoza's affidavits were premised primarily on Backpage.com's practices before 2013—the same practices and time period considered in Washington. The Arizona grand jury proceedings leading to the applications for seizure warrants in this Court were a continuation of the Washington proceedings, but Versoza's affidavits said nothing about the facts adduced by the government in those proceedings or about the prior rulings.

MEMORANDUM OF POINTS & AUTHORITIES

months after appropriate privacy redactions and other small changes . . ." *Id.* at Ex. 10.
Defendants sought additional information to assess the government's claims, but, despite
repeated requests over six weeks the government provided few answers.  Defendants asked
how the government came to inadvertently produce nearly 10,000 pages of documents after
multiple stages of review and what steps the government took to avoid such a wholesale
inadvertent production.  Defendants also asked whether the government had disclosed the
Disputed Documents *or their substance* to third parties—which is relevant to the government's
clawback request and particularly to its assertion of work product for the Memos.  Defendants
suspect the government did disclose the Disputed Documents or their substance to third
parties, as the government's July 2 production labeled all the Disputed Documents as "Released
Records."  *Id.* at ¶¶ 3, 4 & 7.  To date, the government has provided only incomplete and
evasive answers to Defendants' repeated inquiries.  *Id.* at Exs. 7-15.  For example, despite
repeated requests, the government has not said whether it disclosed the *substance* of any of the
Disputed Documents to any third party.  *E.g.*, *id.* at Ex. 15.

While not answering Defendants' questions about disclosure, the government did claim
in its September 18, 2018, privilege log that another 13 documents were work product.  *Id.* at
Ex. 17.  On September 19, the government identified yet another document it claimed to be
work product.  *Id.* at Ex. 18.  The government gave no explanation for its six-week delay in
asserting privilege for those 14 documents, comprising about 130 pages (the "Drafts").  Even
with the work product claims for the additional 14 documents, the government has asserted
no privilege claim for about 9,500 pages of the Disputed Documents.  The term "Memos &
Drafts" is used to refer to the original 8 Memos and the 14 Drafts claimed to be work product.

### D.  The Nature of the Disputed Documents

Because the government has claimed inadvertent production, Defendants feel
constrained not to use the Disputed Documents in this motion.  The motion accordingly does
not quote, cite, or disclose the contents of any Disputed Documents.  Nonetheless, when
considering this motion, the Court should have some understanding of the issues to which the
Disputed Documents are pertinent.  Importantly, the government's discussion of those issues

in the Disputed Documents does not support—and in many instances directly contradicts—Versoza's representations to the Court, including as to at least the following:

- **_Adult Ads Ostensibly "Indicative" of Prostitution_**.   Versoza repeatedly asserted in his affidavits that, based on his "training and experience," he could determine just from looking at "adult" ads that they are "indicative of" or "consistent with" prostitution and/or "sex trafficking." *E.g.*, Versoza Aff. at ¶¶ 29, 31.c, 32, 33.c.[6]   On this basis, Versoza opined that "the majority" or "virtually all" of the ads on Backpage.com in the "adult" categories were "actually advertisements promoting trafficking or prostitution." *Id.* at ¶¶ 29.c, 32.  Defendants believe the government knows, but failed to inform this Court, it is impossible to determine from reading a third-party adult ad if it relates to illegal conduct, whether prostitution, trafficking, or otherwise. *See, e.g., Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("not all advertisements for sex are advertisements for illegal sex"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1282 (W.D. Wash. 2012).

- **_Backpage.com's Ad Screening and Moderation Practices_**.  Backpage.com imposed and enforced rules to screen, block, and remove improper or offensive content in third-party ads, through automated processes and manual review by upwards of 100 moderators.  Versoza's affidavits parroted the accusations of the U.S. Senate Permanent Subcommittee on Investigations ("PSI") that Backpage.com's efforts to screen, prevent, and preclude improper content on its website instead intended to "sanitize" third-party ads to promote illegal conduct.  Versoza Aff. at ¶¶ 30, 30.i, 31.  Versoza did not mention that such screening for terms or images is common for websites hosting third-party content, and is indicative of website operators' efforts to *prevent* improper or illegal conduct, rather than to *promote* such conduct.[7]  *See* 47 U.S.C. § 230(c); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 969

---

[6] Versoza asserted that he can make these determinations even when ads contained "neutral" or "innocuous" terms and/or based on "sexually provocative pictures," *e.g.*, pictures of "a woman's cleavage" or of a woman "wearing lingerie." *Id.* at ¶¶ 31.b, 32.

[7] *See, e.g.*, Facebook pledges to double its 10,000-person safety and security staff by end of 2018 (Oct. 31, 2017), *available at* https://www.cnbc.com/2017/10/31/facebook-senate-testimony-doubling-security-group-to-20000-in-2018.html.

MEMORANDUM OF POINTS & AUTHORITIES

1   (N.D. Ill. 2009) (sheriff's arguments that Craigslist caused or induced illegal content were belied
2   by the website's rules forbidding such content).

3        •   ***Backpage.com's Evolving Review Practices.***   Versoza's affidavits muddled
4   Backpage.com's review and screening practices, failed to disclose those practices changed
5   significantly over time as Backpage.com enhanced its systems for preventing improper content
6   and misuse of the website, and ignored that most of the practices highlighted in his affidavits
7   had been discontinued years earlier.  For example, Versoza cited Backpage.com's initial efforts
8   in 2010-11 to use automated screening to remove offensive terms and photos from ads as part
9   of an alleged effort to "maintain its promotion of sex trafficking and prostitution."  Versoza
10  Aff. at ¶ 30.  Setting aside the baseless characterizations (as Backpage.com *always* required
11  moderators to delete ads that proposed acts of prostitution or other illegal conduct), Versoza
12  disingenuously suggests in his affidavits that Backpage.com moderators still continued to delete
13  inappropriate text from ads in March 2018.  *E.g.*, *id. at* ¶ 31.  In fact, Backpage.com's practices
14  changed in 2012, when it revised systems that deleted text from adult ads and instead required
15  moderators to remove ads containing prohibited terms or phrases or other inappropriate text.[8]
16  The government knows of these changes in moderation practices and Versoza's failure to
17  disclose them misled the Court.  Moreover, Versoza also failed to disclose that Backpage.com
18  personnel consistently explained that the objectives of the website's moderation efforts were
19  to prevent improper content and misuse of the website.

20        •   ***Backpage.com's Cooperation with Law Enforcement***.   Versoza opined
21  Backpage.com and Defendants sought to facilitate unlawful conduct, but failed to disclose
22  Backpage.com's extensive cooperation with law enforcement. Backpage.com routinely
23  cooperated with law enforcement officials by: reporting suspect ads to NCMEC; promptly
24  responding to subpoenas and other information requests (usually within 24 hours); providing

25

26  ───────────────
    [8] Versoza also described posting a dating ad on Backpage.com in February 2018 and discussed
27  the "adult sections" of the website at the time, Versoza Aff. at ¶ 25.a, although the adult
    categories were eliminated a month before. Versoza also conflated moderation standards for
28  dating ads with standards for ads in the former escort category. *E.g.*, *id.* at ¶ 30.c (discussing
    rules for dating ads, where some nudity/sexual content was permitted).

witnesses to testify in criminal prosecutions across the country (at Backpage.com's expense); promptly removing ads as requested by law enforcement; and conducting independent research to support law enforcement investigations and prosecutions. The government knows all of this, but said nothing of it in seeking the seizure warrants, as doing so would have significantly undermined its claim that Defendants intentionally sought to promote or facilitate unlawful activities.[9]

Because there are several thousand Disputed Documents, totaling nearly 10,000 pages, Mr. Larkin is submitting with this motion three exemplar documents, with an accompanying declaration, under seal. Cambria Decl., Exs. 3-5. One of the examples is a document the government admits is not privileged in any respect, yet still seeks to claw back. *Id.* at Ex. 5. The other documents are two of the Memos, which the government asserts are work product. *Id.* at Exs. 3 & 4.

## III. ARGUMENT

### A. The Government Breached Its Obligations of Candor

This case, which began with Versoza's *ex parte* affidavits, falls in a portion of federal criminal practice that heavily depends on the candor of government attorneys and agents. "[I]n an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, *whether or not the facts are adverse.*" *Campbell v. Rice*, 408 F.3d 1166, 1175 (9th Cir. 2005) (emphasis added). In this setting, government lawyers have greater obligations than other lawyers. *E.g.*, ABA Crim. Just. Stds. for the Prosec. § 3-1.4 (4th ed.) ("[i]n light of the prosecutor's public responsibilities, broad authority and discretion, the prosecutor has a heightened duty of candor to the courts") & § 3-3.3 (in *ex parte* communications, "the prosecutor should inform the court of material facts known to the prosecutor, including facts that are adverse, sufficient to enable the court to make a fair and informed decision.")[10]

---

[9] Versoza also failed to mention that Backpage.com's extensive cooperation with law enforcement led to numerous commendations. *E.g.*, Cambria Decl., Ex. 6 (DOJ certificate for "outstanding cooperation and assistance" signed by FBI Director Robert Mueller).
[10] *See also Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*, 962 F.2d 45, 47 (D.C. Cir. 1992) (the

To meet its obligations of candor, the government also was required to disclose all applicable law bearing on whether the government was entitled to the seizure warrants. In presenting papers to the court, government counsel and their agents certify their legal contentions are "warranted by existing law" (or a nonfrivolous argument to extend or modify existing law). Fed. R. Civ. P. 11(b)(2). "A court has a right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done the court cannot perform its task properly." *Van Derheydt v. County of Placer*, 32 F. App'x. 221, 223 (9th Cir. 2002); *accord Time Warner Ent. Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 415 (E.D.N.Y. 1994) (refusing to issue *ex parte* civil seizure warrants that would have violated defendants' constitutional rights, and criticizing counsel for failing to follow the "well-established rule of professional responsibility" obligating them to inform the court of statutes and case law foreclosing the relief sought). "In an *ex parte* proceeding, in which the adversary system lacks its usual safeguards, the duties on the moving party must be correspondingly greater." *Id.* at 415.

The government disregarded its obligations of candor when seeking the civil seizure warrants. The government failed to disclose material adverse facts, *e.g.*, regarding *actual* practices of the website, its cooperation with law enforcement, and the fact that neither the website nor anyone else could know that an ad lawful on its face would instead result in unlawful conduct. The government also failed to disclose the numerous cases holding that escort ads as formerly published on Backpage.com were lawful and constitutionally protected speech and, more generally, that the seizure warrants could not be lawfully issued and executed on the basis asserted by the government. The Disputed Documents demonstrate that the government was aware of both the material adverse facts and the adverse law, but disclosed neither to the Court.

## B. The Work Product Doctrine Cannot Be Used To Shield Misconduct

The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v.*

---

principle that "government lawyers have obligations beyond those of private lawyers . . . appl[ies] with equal force to the government's civil lawyers.").

*Christensen*, 828 F.3d 763, 805 (9th Cir. 2015). But the privilege under the work product doctrine "is not absolute" and "may be overridden if the party that seeks the otherwise protected materials 'establish[es] adequate reasons to justify production.'" *Id.* Because the "purpose of the work product doctrine is to protect the integrity of the adversary process . . . it would be improper to allow an attorney to exploit the privilege for ends that are antithetical to that process." *Id.* (*quoting Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983)). In *Parrott*, the district court compelled the production of work product (recorded witness interviews) because of attorney misconduct in clandestinely recording those interviews in violation of the ethical rules. *Parrott*, 707 F.2d at 1270-71. The Eleventh Circuit affirmed, holding that "whatever work product privilege might have existed was vitiated by counsel's clandestine recording of conversations with witnesses." *Id.* at 1272.

Similarly, in *Moody*, the government sought to withhold production of a memorandum prepared by an IRS attorney as work product. *Moody v I.R.S.*, 654 F.2d 795, 798-99 (D.C. Cir. 1981). Moody moved to compel production, alleging that the memo documented "impermissible legal conduct"—an improper *ex parte* meeting between the IRS lawyer and a judge before whom the lawyer would appear a few days later. Moody argued that it would be a "perversion of the work product doctrine . . . to allow it to be used to 'cover up' activities destructive of [the adversary] system." *Id.* at 799-800. The D.C. Circuit agreed, holding it "would indeed be perverse, as appellant contends, to allow a lawyer to claim an evidentiary privilege to prevent disclosure of work product generated by those very activities the privilege was meant to prevent." *Id.* at 800. The court further held that an "attorney should not be able to exploit the privilege for ends outside of and antithetical to the adversary system any more

than a client who attempts to use the privilege to advance criminal or fraudulent ends." *Id.*[11]

Here, the Memos demonstrate that the government failed to disclose to the Court material adverse facts and that the warrants were not permitted under applicable law, depriving the Court of information needed for a "fair and informed decision." ABA Crim. Just. Stds. for the Prosec. § 3-1.4 (4th ed.). Allowing the government to exploit the qualified privilege for work product to shield its improper conduct from scrutiny would be antithetical to the adversary process, particularly as the improper conduct occurred in an *ex parte* context in which the Court necessarily must rely on the candor and accuracy of the government's representations. The Court should review the Memos submitted for *in camera* review and, after confirming Defendants' assessment of them, order that the government's breaches of its obligations of candor in seeking and obtaining the seizure warrants vitiate any protections that otherwise may extend to the Memos under the work product doctrine.

### C.   The Government Waived Any Work Product Privilege By Producing the Memos & Drafts to Defendants

Rule 502(b) of the Federal Rules of Evidence governs whether the government's production of the Memos & Drafts to Defendants operates as a waiver of the qualified privilege under the work product doctrine. Under Rule 502(b), a disclosure of privileged documents results in a waiver unless: 1) the disclosure was inadvertent; 2) the disclosing party took "reasonable steps to prevent disclosure;" and 3) the disclosing party took "reasonable steps to rectify the error." *Am. Capital Homes, Inc. v. Greenwich Ins. Co.*, 2010 WL 11561400, at *2 (W.D. Wash. Aug. 3, 2010). As the party asserting that the Memos & Drafts are protected from disclosure as work product, the government has the burden of proving both the applicability

---

[11] *See also United States v. Jarrett*, 2010 WL 1577670, at *4 (N.D. Ind. Apr. 20, 2010) (attorney-client, work product, and deliberative process privileges "must be overridden in an instance such as this where the sole way for a defendant to prove his allegation of government misconduct . . . is through . . . documents typically protected by the privilege. *See, In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ('[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.')")

of the work product doctrine and that the government has not waived the qualified privilege. *See, e.g., Bozzuto v. Cox, Castle & Nicholson, LLP*, 255 F.R.D. 673, 677 (C.D. Cal. 2009). The government also has the burden to prove each of the three elements of Rule 502(b). *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, at *3 (W.D. Pa. March 17, 2015).

The government provided a privilege log for the Memos, and then last week supplemented it twice to include the Drafts, but those logs are insufficient to satisfy the government's burden. Cambria Decl., Exs. 16-18. Among other things, the logs do not address the factors pertinent to inadvertent disclosures or whether the government previously waived the privilege through intentional disclosures (discussed further below). At this stage, the government may no longer rest on its privilege logs, but "bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of documents." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008). "A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden." *Id.*

Here, the government has fallen far short of meeting its burden under Rule 502(b). An analysis of the Rule 502(b) factors leads to the conclusion that the government waived any protections for work product.

***Circumstances Suggest Intentional Disclosure***: Defendants question the government's assertion that its production of the Disputed Documents was inadvertent—as opposed to a shift in strategy after the government learned Defendants quickly located the exculpatory documents in a supplemental production of more than 170,000 pages following an initial production of 10,000,000 pages. In producing the Disputed Documents as part of the 170,000-page supplemental production, the government expressly noted that the disputed documents had been "mistakenly withheld" from the initial production to Defendants, and it labeled them (along with another 170,000 pages of documents) as "Released Records." Even in now trying to claw back the documents the government has acknowledged it must ultimately

1  produce at least 9,500 of the 9,745 pages of the Disputed Documents under *Brady/Giglio*[12] (and,
2  as discussed below, Defendants contend the balance must be produced as well).

3       For over a month, the government was unable to explain how the documents
4  "mistakenly withheld" from Defendants suddenly became "inadvertently produced" to
5  Defendants.   Last Wednesday, the government said a clerical error caused the inadvertent
6  production.  Cambria Decl., Ex. 14.  The government's "clerical error" claim is convenient but
7  not credible.   The government claims a "technology support specialist" mistakenly put
8  unreviewed documents in a folder intended for documents "the prosecution team had
9  determined were subject to disclosure."  *Id.*  This explanation is premised *entirely* on the clerk
10 mistakenly putting documents from the Washington grand jury proceedings in the wrong
11 folder—but those are just a small fraction of the Disputed Documents.  The government's
12 "explanation" does not account for more than 6,000 of the 9,547 pages of Disputed
13 Documents.   The government's failure to provide evidence to support its claim that the
14 production was inadvertent, rather than a post-disclosure change in strategy, warrants a finding
15 that any privilege otherwise applicable to the Memos & Drafts was waived.  *LabMD*, 2015 WL
16 1213043, at *4 (finding waiver where disclosing party "present[ed] no evidence to support its
17 claim that filing the documents with the Court was inadvertent and not the result of a post-
18 filing change in strategy").

19      ***The Absence of Reasonable Steps to Prevent Disclosure***:  "To decide whether a
20 party took reasonable steps to prevent disclosure, courts in the Ninth Circuit and elsewhere
21 have employed a set of five factors: the reasonableness of precautions taken, the time taken to
22 rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of
23 fairness."  *Am. Capital*, 2010 WL 11561400, at *2.

24      "The reasonableness of the steps taken by the producing party must be judged by the
25 standards of customary practice in the legal profession, not with the 20-20 vision of hindsight."
26 *Id.*  Here, given the sheer enormity of the government's claimed inadvertent production—

27
28
---
[12] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

1   several thousand documents, comprising nearly 10,000 pages in one contiguous block—the
2   government cannot plausibly contend it acted reasonably to avoid an inadvertent production.
3   Even a cursory check of the supplemental production set would have disclosed the presence
4   of the Disputed Documents, as the purportedly inadvertently produced documents were over
5   *five percent of the entire supplemental production*.  And, even without reviewing a single document, any
6   reasonable level of diligence would have disclosed that the Disputed Documents were in the
7   production, as all the Disputed Documents were identified as coming from custodians whose
8   documents the government now says should not have been in the production set.

9        Moreover, the government should have been particularly vigilant in its oversight of the
10   July 2 supplemental production—as the government made the supplemental production *to*
11   *correct a major error in the initial production*.  If the government actually made a major error in the
12   supplemental production (a huge inadvertent production) while attempting to correct a major
13   error in the initial production (the omission of 170,000 pages), its oversight of the later
14   production surely was not reasonable in relation to the "customary practice in the legal
15   profession." *Id.* (finding the plaintiff's actions were unreasonable where the errors in its first
16   round of production were followed by errors in its second round of production, which errors
17   "could have been avoided if an attorney familiar with the documents had conducted the final
18   quality control").

19        Here, it is not surprising that, after six weeks, the government has provided no
20   information about the steps it took to prevent an inadvertent production, much less any
21   evidence it took "reasonable steps to prevent disclosure" of the Disputed Documents—other
22   than its conclusory claim that "we had taken reasonable steps to prevent such disclosure."
23   Cambria Decl., Ex. 14.  Given this failure, the Court should find the government has waived
24   any privilege otherwise applicable to the Memos & Drafts. *LabMD*, 2015 WL 1213043, at *4
25   (finding waiver where disclosing party presented "no evidence to weigh precautionary measures
26   taken, or to determine whether the [error] occurred due to an inappropriate delegation to
27   administrative staff or some mishap otherwise within the control of counsel").

28        The time taken to rectify also weighs against finding the government acted reasonably.

The government claims it learned of the production of work product on July 25, but did not notify Defendants until July 27.  The government then waited until August 8 to provide a privilege log, which identified just 8 documents.  Cambria Decl., Ex. 16.  Last week, the government twice revised the privilege log, identifying as work product 13 more documents on September 19 and yet another document on the morning of September 20.  *Id.* at Exs. 14 & 15.  These 14 documents were located in the production immediately adjacent to the 8 documents initially claimed as privileged—so there can be no justification for a six-week delay in asserting privilege.  The government's efforts to protect any privilege, and rectify the purported inadvertent production, thus have been far from reasonable (not customary practice in the legal profession).

The "extent of disclosure" factor also weighs heavily in favor of a finding that the government did not take reasonable steps to prevent an inadvertent disclosure.  Defendants possessed the Disputed Documents, including the Memos & Drafts, for nearly a month before the government sought to claw them back.  Defendants and their counsel extensively reviewed and discussed the Memos during that time. As such, the "extent of disclosure" of the Memos was comprehensive and complete.  Although courts in the Ninth Circuit and elsewhere consider several factors to evaluate whether an inadvertent production effects a waiver, the "extent of the disclosure factor" can, by itself, be "dispositive."  *LabMD,* 2015 WL 1213043, at *6.

In *LabMD*, the disclosing party attached purported work product (a RICO statement) to a court filing, which put the document in the hands of at least two of its opponents.  *Id.* at 7.  The court held that "the voluntary and complete disclosure of the original RICO statement on the public docket and to at least two Defendants weighs 'most heavily' in favor of finding waiver."  *Id.*[13]   Here, whether inadvertent or not, the government made a voluntary and

---

[13] *LabMD* relied heavily on *Carter v. Gibbs*, 909 F.2d 1450 (Fed. Cir. 1990), *superseded by statute on other grounds as stated in In re EchoStar Commc'ns Corp.*, 484 F.3d 1294 (Fed. Cir. 2006), and *United States v. Gangi*, 1 F. Supp. 2d 256 (S.D.N.Y. 1998), both involving DOJ's production of internal memoranda. *Carter,* 909 F.2d at 1451 ("Voluntary disclosure of attorney work product . . . defeats the policy underlying the privilege . . . Granting the motion would do no more than seal the bag from which the cat has already escaped."); *Gangi,* 1 F. Supp. 2d at 267 ("the

14

complete disclosure of the Memos & Drafts to *all* Defendants, all of whom read (and re-read) the key Memos, and some of whom reviewed the Drafts.  That bell cannot be unrung, and no order can erase the knowledge that Defendants and their counsel now have of the Memos & Drafts.  Those indisputable facts weigh most heavily in favor of finding waiver.

Finally, with respect to fairness, the Court should not permit the government to claw back and attempt to bury information that contradicts the basis on which the government obtained the seizure warrants.  Allowing the government to bury the Memos & Drafts would be grossly unfair to Defendants.

## D.   The Government Has Failed to Prove It Did Not Waive Any Privilege By Disclosing the Memos & Drafts, Or Their Substance, to Third Parties

Defendants' counsel repeatedly asked the government to disclose whether DOJ disclosed the Disputed Documents (including, in particular, the Memos) to, or shared their substance with, any third parties, including other governmental agencies or officials (*e.g.*, the PSI, members of Congress, or state or local agencies or officials) or others (*e.g.*, plaintiffs' lawyers, the media, or any other third parties).  The government still has not provided adequate answers to these questions, despite repeated promises to do so.  Last week the government asserted it had not disclosed the Disputed Documents to third parties, while ignoring Defendants' requests (in writing on August 22 and orally the morning of September 18) that the government disclose whether it shared the substance of the Disputed Documents (and, in particular, the Memos) with third parties.  Cambria Decl. ¶ 15 & Ex. 15.  If the government disclosed some or all of the Memos & Drafts to, or shared their substance with, any third parties, such disclosures (and the extent of any such disclosures) bear directly on the propriety of the government's work product claim.  Fed. R. Evid. 502(b).  As the party asserting privilege,

---

Government's voluntary disclosure of the Prosecution Memorandum, however inadvertent, has substantially increased the opportunity for defendants to procure it. Counsel for two defendants already have seen it. *See Int'l Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449 (D. Mass. 1988) ("There is no order I can enter which erases from defendant's counsel's knowledge what has been disclosed."). Thus, the purpose of the work product doctrine, that 'opposing counsel should not enjoy free access to an attorney's thought processes,' has already been severely undermined.") (internal citations omitted)).

the government has the burden to prove the bases for the privilege and that it has not been waived. To date, and despite ample opportunity, the government has utterly failed to do so.

### E. Alternatively, the Government Should Not Be Permitted to Block Access to the Disputed Documents Because Defendants Are Entitled to Them Under Fed. R. Civ. P. 26(b)(3)(A) and *Brady/Giglio*

If the Court determines that the government has not waived the work product privilege through misconduct, production to Defendants, or disclosure to third parties, the government nonetheless still should not be permitted to block Defendants' access to the Memos & Drafts, as Defendants are entitled to them under Fed. R. Civ. P. 26(b)(3)(A) and the government also will be obligated to disclose the Disputed Documents during the criminal proceedings as *Brady/Giglio* materials.

#### 1. Access Under Fed. R. Civ. P. 26(b)(3)(A)

Work product generally is not subject to discovery in civil litigation, but a party may obtain such discovery by showing "substantial need for the materials to prepare its case" and that it "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). "[T]o the extent that work product contains relevant, nonprivileged *facts*, the work product doctrine merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show adequate reasons why the work product should be subject to discovery." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015) (emphasis in original). The "adequate reasons" test corresponds to Rule 26(b)(3)'s requirement that a party seeking factual work product demonstrate substantial need and an inability to obtain the substantial equivalent by other means. *Boehringer*, 778 F.3d at 153; *see also* Fed. R. Civ. P. 26(b)(3)(A)(iii).

A moving party under Rule 26(b)(3) generally meets its burden by demonstrating: the materials are relevant to the case; the materials have a unique value apart from those already in the movant's possession; and "special circumstances" justify production. *Boehringer*, 778 F.3d at 155. Showing "special circumstances" is not a heavy burden. *See id.* For example, courts have found special circumstances if information in an accident report was not available

elsewhere and if parties sought discovery of witness statements, but the witnesses refused to be interviewed, had lapses of memory, or deviated from prior statements. *Id.* at 155-56.

The standard to obtain to opinion work product is higher than for fact work product. Opinion work product is "an attorney's mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation." *United States v. McGraw-Hill Co., Inc.*, 2014 WL 8662657, at *5 (C.D. Cal. Sept. 25, 2014). "Opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Courts have allowed the discovery of opinion work product in cases like this "where the prosecutor's intent or motivation is put at issue." *McGraw-Hill*, 2014 WL 8662657, at *6 (selective prosecution claims justified production of the government's opinion work product).

Here, the Memos contain factual information for which Defendants have substantial need and that information is not readily available elsewhere. The Memos are critical because they prove facts contrary to Versoza's allegations *and* they prove the government knew those facts and understood their importance—yet did not disclose them to the Court when seeking the seizure warrants. Mr. Larkin thus demonstrates a substantial need for the factual portions of the Memos under Fed. R. Civ. P. 26(b)(3)(A), and an inability to obtain the information elsewhere. As such, the Court should order that Defendants are entitled to the factual portions of the Memos.

To the extent the Memos contain opinion work product, Defendants have a compelling need for it. Defendants have asked this Court to quash numerous civil seizure warrants and to return all their seized assets. For some arguments in the Seizure Motion, namely those involving the state of mind, intent, and motivation of the government and its actors, the Memos could play a significant role in the remedy the Court fashions for the government's transgressions. As such, the government's understanding of the facts and law when it sought the seizure warrants is squarely at issue and Defendants have a compelling need for proof of what the government knew. Defendants are unlikely to find equivalent information elsewhere. *See McGraw-Hill*, 2014 WL 8662657, at *6 (ordering production of both ordinary work product

and opinion work product in a suit involving selective prosecution claims, as "the materials are communications within the U.S. Department of Justice" and "it would likely be impossible to obtain equivalent materials from any other source").[14]

### 2. Access Under *Brady*/*Giglio*

***The Unprivileged Documents.*** The government asserted no privilege for some 9,500 pages of the Disputed Documents, yet sought to claw them back nonetheless. The government acknowledged these materials are subject to production, saying it would provide them "in the coming months," but demanding that Defendants not review or use them because the government might want to make "privacy and other redactions." Cambria Decl., Ex. 10. This is not a proper basis for the government to demand that Defendants return or destroy the documents. Having produced *Brady*/*Giglio* materials, the government has no basis to demand their return just to produce them later—particularly as they are directly pertinent to the pending Seizure Motion. If the government has valid concerns about individuals' private information within these records, such concerns can easily be addressed by confidentiality undertakings between the parties.[15] The Court should order that the government's claim of inadvertent production does not restrain Defendants' ability to use the roughly 9,500 pages of admittedly non-privileged *Brady*/*Giglio* materials.

***The Alleged Work Product.*** The prosecution's "suppression . . . of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Evidence impeaching a witness' credibility must be disclosed if "favorable to the

---

[14] If the Court determines Defendants are entitled to fact work product, but not opinion work product, the court should reexamine the Memos to identify the factual matters that may be disclosed without revealing attorney opinions. *Boehringer*, 778 F.3d at152. "Not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988).

[15] For example, the government could identify documents with private information, which Defendants would not disclose without providing the government an opportunity to seek sealing, redaction, or an appropriate protective order. Despite having had more than six weeks to identify any such documents, however, the government has not done so.

1  accused." *Giglio*, 405 U.S. at 154.  The Memos both prove facts contrary to Versoza's
2  allegations and impeach his credibility.  Because the government's disclosure obligations under
3  *Brady/Giglio* are rooted in the Constitution, they override court-made procedural rules curtailing
4  the discovery or disclosure of work product.

5        As a general rule, pure opinion work product is not discovery under *Brady/Giglio*, but a
6  "prosecutor's opinions and mental impressions of the case" are discoverable if "they contain
7  underlying exculpatory facts." *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011).  Here,
8  Defendants recall that, to the extent the Memos include strategies, legal theories, impressions
9  of evidence, and the like, those portions of the Memos (at least in large part) contain underlying
10  exculpatory facts and thus must be disclosed under *Kohring*.  (Defendants are hampered because
11  they never reviewed the Memos from this perspective, as they believed the government
12  produced the Memos after waiving the privilege.).

13        Opinion work product also can be discoverable under *Brady/Giglio* if it may reveal
14  government misrepresentations that "could alter the outcome of the [] prosecution," in which
15  case the "government cannot shield what would otherwise be *Brady* material behind claims of
16  opinion work product privilege." *United States v. Trabelsi*, 2015 WL 5175882, at *5 (E.D.N.Y.
17  Sept. 3, 2015) (where government misrepresentations and misconduct were alleged in obtaining
18  an extradition, "the "privilege" to withhold opinion work product "must give way" as that
19  conduct "might warrant dismissal of the ... indictment").

20        Under these principles, Defendants plainly are entitled to the factual portions of the
21  Memos & Drafts and to any opinion work product in the Memos & Drafts that includes
22  exculpatory facts.  Defendants also entitled to any pure opinion work product in the Memos
23  & Drafts that supports their claims of government misconduct.  Defendants' counsel have not
24  yet used the information in the Memos, nor will they refer any specific contents of the Memos
25  before the Court compels their unrestricted disclosure, but the Memos are replete with
26  exculpatory facts, information that impeaches Versoza's affidavits, and statements of pertinent
27  law adverse to the issuance of the warrants—all of which go to any assessment of whether the
28  government misled the Court through misrepresentations and omissions.

19
MEMORANDUM OF POINTS & AUTHORITIES

## IV.   CONCLUSION

The government has no basis to block Defendant's use of any non-privileged Disputed Documents in these proceedings.  And it cannot use the work product doctrine to cover up its misconduct in seeking and obtaining the seizure warrants.  Moreover, the government waived any privilege by producing the Memos & Drafts to Defendants, and also failed to meet its burden to demonstrate that it did not also waive privilege by sharing the Memos & Drafts (or their substance) with third parties.  Alternatively, Defendants are entitled to the Memos under Fed. R. Civ. Pro. 26(b)(3)(A) and under *Brady/Giglio*.

Accordingly, for the reasons set forth above, the Court should order that Defendants can access and use all the Disputed Documents, notwithstanding the government's claim of inadvertent production, for all purposes.  Additionally, while the Court can and should grant the Seizure Motion on the papers without further delay, to the extent the Court is weighing evidence to determine whether Defendants are entitled to the relief requested in the Seizure Motion, the Court should be able to review and consider the Disputed Documents in making that determination, and Defendants should be able to use the Disputed Documents at an evidentiary "*Franks* hearing" ordered by the Court.


Dated: September 25, 2018          BIENERT, MILLER & KATZMAN, PLC

By: */s/ Thomas H. Bienert, Jr.*
    Thomas H. Bienert, Jr.
    Kenneth M. Miller
    Anthony R. Bisconti
    Whitney Z. Bernstein
    Attorneys for James Larkin

DAVIS WRIGHT & TREMAINE, LLP
By: */s/ James C. Grant*
    James C. Grant
    Robert Corn-Revere
    Attorneys for James Larkin

## CERTIFICATE OF SERVICE

I hereby certify that I am a citizen of the United States and am a resident employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

I further certify that I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: **NOTICE OF MOTION AND MOTION TO ACCESS AND USE PURPORTEDLY INADVERTENTLY PRODUCED MATERIALS** on the interested parties as follows:

[X]    **BY ELECTRONIC MAIL**:  by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

John.kucera@usdoj.gov
bobcornrevere@dwt.com
scottcommerson@dwt.com
gsl@birdmarella.com
aan@birdmarella.com
gkp@birdmarella.com
emccampbell@lglaw.com
janey@henzecookmurphy.com
jrubiner@bkolaw.com
bf@federlawpa.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made

Executed on September 25, 2018 at San Clemente, California.

/s/ Michele Ueda
Michele Ueda