Paul J. Cambria, Jr. (NY 1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **In the matter of the seizure of:**<br><br>Any and all funds held in Republic Bank of Arizona Account(s) xxxx1889, xxxx2592, xxxx1938, xxxx2912, xxxx2500. | CASE NO. 18-CV-6742-RGK(MAAx)<br>18-MJ-00722-PJW<br><br>[RELATED CASES 18-CV-08569; 18-CV-08588; 18-CV-08565; 18-CV-08566; 18-CV-08568; 18-CV-08570; 18-CV-08577; 18-CV-08578; 18-CV-08579; 18-CV-08592; 18-CV-08551; 18-CV-08555; 18-CV-08556; 18-CV-08723; 18-CV-08423; 18-CV-08730; 18-CV-08747; 18-CV-08748; 18-CV-08749; 18-CV-08750; 18-CV-08753; 18-CV-08754; 18-CV-08759; 18-CV-08760; 18-CV-08763]<br><br>**CLAIMANT MICHAEL LACEY'S SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR RELEASE OF CERTAIN UNTAINTED FUNDS (DOC. 22)** |

Claimant Michael Lacey, by and through his undersigned attorneys, files the instant supplemental memorandum in further support of his Notice of Motion and Motion for Release of Certain Untainted Funds (Doc. 22) ("Motion"), as directed by this Court (Doc. 102).

## BACKGROUND

On August 10, 2018, Mr. Lacey filed the Motion seeking an order requiring the government to immediately release the funds held in three of his seized accounts (Republic Bank Accts. xxxx1897, xxxx2485, xxxx3126) (collectively, the "Funds"). In his memorandum of law in support of the Motion (Doc. 23), Mr. Lacey asserted that, in addition to the constitutional challenges to the government's unlawful seizure of the Funds set forth in James Larkin's Motion to Vacate (Doc. 6) in which Mr. Lacey joined, there were additional reasons for the immediate release of the Funds. Indeed, prior to filing the Motion, Mr. Lacey's counsel contacted the government and provided proof that the Funds were untainted under the government's own theory of the case because the Funds were not traceable to the website www.backpage.com ("Backpage"), and money traceable to Backpage was mistakenly transferred into those accounts by a third party, unbeknownst to Mr. Lacey and without his authority. Counsel stressed that the Funds were necessary to fund a defense to the criminal prosecution pending in the District of Arizona; however, the government was unwilling to commit to reviewing Mr. Lacey's proof or interviewing the employee involved with the accidental and unauthorized transfer. Unable to resolve the release of these Funds with the government, Mr. Lacey filed the Motion, asserting that the government had no authority to seize untainted Funds, that he had demonstrated that he lacked the specific intent necessary to find that he used the Funds to engage in money laundering because he had no involvement with or knowledge of the mistaken transfer, and that the continued pretrial seizure of the funds violated his Sixth Amendment right to counsel because the Funds were necessary for his defense to the serious criminal charges pending against him in the District of Arizona.

The government filed no substantive opposition to the Motion. (*See* Doc. 57.) Instead, the government sought and obtained a stay of all litigation in this case and the related civil forfeiture cases. (*See* Doc. 85.)

On October 29, 2018, Mr. Larkin, Mr. Lacey, and the other claimants in this case ("Claimants") filed a notice of appeal. (Doc. 86.) After an expedited hearing of the appeal, the Ninth Circuit vacated the stay order, remanding the matter to this Court to conduct further proceedings concerning the constitutional challenges raised by Claimants in the Motion to Vacate. Upon remand, this Court ordered Claimants Lacey and Larkin to file supplemental memoranda identifying the authority for both the Motion to Vacate and the Motion and the legal standards under which this Court should evaluate those filings. (Doc. 102.) As set forth in Mr. Larkin's memorandum on Legal Authority for Opposition to Seizure Warrants and Basis for Relief in further support of the Motion to Vacate (incorporated herein by reference), this Court should vacate the seizure warrants that authorized seizure of the Funds because those warrants violated Mr. Lacey's First, Fourth, and Fifth Amendment rights.

In addition to those challenges to the seizure of the Funds, this supplemental memorandum addresses the additional bases that empower this Court to order the immediate release of the Funds; namely, Mr. Lacey's Sixth Amendment right to counsel of choice.

## ARGUMENT

**I.    This Court should order the release of the Funds because their continued seizure violates Mr. Lacey's Sixth Amendment rights.**

The government's pretrial seizure of a defendant's assets without establishing that the assets seized are traceable to a charged crime violates the Sixth Amendment. In the seminal case on pretrial seizures, *Luis v. United States*, 578 U.S. ___, 136 S. Ct. 1083 (2016), the Supreme Court recognized that, prior to trial, the government has no authority to seize "property with no connection to the charged crime," commonly referred to as untraced or untainted assets. *See id*. at 1094. Further, there is "no decision" of the Court that has ever "authoriz[ed] unfettered, pretrial forfeiture of the defendant's own 'innocent' property—property with no connection to the charged crime." *Id*.; *cf. United States v. Ripinksy*, 20 F.3d 359, 363 (9th Cir. 1994) ("[S]ubstitute assets are not subject to pretrial restraint."). Instead, "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates

the Sixth Amendment" because such restraint eviscerates a defendant's Sixth Amendment right to counsel of choice. *Luis*, 136 S. Ct. at 1088.

*Luis* provides a mechanism for preventing such a Sixth Amendment violation—the government must establish and the district court must find that each asset seized prior to trial is traceable to a crime charged. *See id.* at 1095-96. Indeed, the Court recognized that district courts "have experience separating tainted assets from untainted assets" and such analysis should be undertaken to enable a defendant to access and use so-called untainted funds to pay for defense counsel. *Id.* at 1095. Even prior to *Luis*, district courts routinely held pretrial hearings at which the government was required to demonstrate that each asset seized was traceable to a crime charged to preclude a defendant from using that asset to fund counsel of choice. *See Kaley v. United States*, 571 U.S. 320, 324 (2014) (recognizing that, "[s]ince *Monsanto*, the lower courts have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer").

In this case, the government has not established that the Funds are traceable to any of the crimes charged. To date, *no court* has required the government to establish tracing and none of the government's submissions in this Court or elsewhere (including the seizure warrant applications) include such analysis. For this reason, this Court should order the government to return the seized assets because they were seized prior to trial without a showing of tracing in violation of the Defendants' Sixth Amendment rights as recognized in *Luis*. The government's failure to establish tracing is particularly egregious in this case because Mr. Lacey had accumulated significant wealth from his interest in the operation of a newspaper conglomerate long before the period relevant to the crimes charged in the Arizona indictment. (*See* Doc. 24, J. Henze Cook Decl. ¶ 41.) Indeed, since the filing of the Motion, the government has conceded that revenue generated from operation of the newspapers, which was the only source of revenue for the Funds, is "clean" and "legitimate." (*See United States v. Lacey*, 18-CR-422 (D. Ariz.) Jan. 25, 2019 Tr., attached hereto as Ex. A at 62.) Yet, Mr. Lacey has been forced to defend himself against serious charges without access to any of his assets that even the government acknowledges are "clean" and "legitimate."

4

MICHAEL LACEY'S SUPPLEMENTAL MEMORANDUM OF LAW

The government may claim that its seizure is lawful because the Funds include mixed money, meaning money derived from the newspaper and money derived from Backpage and that the mixing of those monies constitutes money laundering. There is no basis in law or in fact for such an argument. Money laundering is a specific intent crime. *See, e.g., United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003). This means that the government must be able to show that Mr. Lacey (and no one else) had the specific intent to mix money that was both traceable and untraceable to the crimes charged to launder the money that is purportedly traceable to a crime charged. However, as the Motion and supporting documents make clear, Mr. Lacey had no knowledge of or involvement with the accidental transfer by a third-party office employee, against his instructions, of money related to Backpage into the account that held the Funds. Because the government will be unable to show any intent, let alone the specific intent required by the money laundering statutes, there is no legitimate reason for the government's continued seizure of the Funds.

Further, the government's continued seizure of Mr. Lacey's innocent funds without establishing tracing for the full value of each asset seized is not supported by any authority. To the contrary, the Supreme Court has cautioned that the pretrial seizure of innocent assets without a showing of tracing or an incorrect finding of tracing which deprives a defendant in a criminal matter of counsel of choice constitutes structural error for which reversal of a conviction is automatic. *See Luis*, 136 S. Ct. at 1089 (recognizing that the Court views the "wrongful deprivation of the right to counsel" as a "structural error that so affects the framework within which the trial proceeds that courts may not even ask whether the error harmed the defendant" (quotations omitted)); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) ("Deprivation of the right" to counsel "is complete when defendant is erroneously prevented from being represented by the lawyer he wants." (quotations omitted)). Consequently, this Court should order the government to return all assets that have not been traced to the crimes charged.

In sum, *Luis* provides this Court with the authority to order the release of the Funds or in the alternative, to order a tracing hearing. Further, *Luis* provides the standards under

which this Court should consider the Motion. Here, Mr. Lacey has demonstrated that the Funds are untainted under the government's theory of the case, as set forth in greater detail in the Motion and its related submissions, so this Court should order the immediate release of the Funds under *Luis*. Alternatively, this Court should schedule a tracing hearing at which the government must rebut Mr. Lacey's proof that the assets are untainted, or this Court should order release of the Funds under *Luis*.

**II.     This Court should exercise its inherent authority to protect Mr. Lacey's Sixth Amendment rights to counsel of choice.**

In addition to the directive to courts to require the government to establish tracing as a matter of Sixth Amendment jurisprudence as recognized in *Luis*, this Court has the inherent authority to order the government to establish tracing and to return any assets that the government is unable to trace to illegality.

Federal courts possess certain implied or inherent powers that "are necessary to the exercise of all others." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812). Inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditions disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *see also United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (recognizing the well-settled "principle that district courts have inherent power to control their dockets" (quotations and alterations omitted)). In the context of criminal cases, the Supreme Court recognized that federal courts have the inherent supervisory authority to: (1) "implement a remedy for violation of recognized rights"; (2) "preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury"; and (3) implement "a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). However, this list of inherent powers is not exhaustive. *See W.R. Grace*, 526 F.3d at 511 n.9 (explaining that since *Hastings*, the Supreme Court has recognized inherent power outside the context of the three powers

identified in *Hastings*, which means that federal courts possess inherent power broader than those identified in *Hastings*).

The Ninth Circuit has expressed approval for the exercise of inherent authority to protect the rights of defendants in criminal cases in many contexts. *See, e.g.*, *United States v. Chapman*, 524 F.3d 1073, 1084-88 (9th Cir. 2008) (affirming dismissal of indictment for discovery violations under district court's inherent supervisory authority); *W.R. Grace*, 526 F.3d at 508-16 (recognizing that district courts have "the inherent power to control their dockets" and pursuant to that authority district courts may order the government to provide discovery long before trial to ensure a fair trial). More importantly, the Ninth Circuit has expressed approval for the exercise of inherent authority to redress the government's violation of the defendant's Sixth Amendment right to counsel of choice. *See United States v. Lopez*, 4 F.3d 1455, 1463 (9th Cir. 1993) (expressing approval for district court's exercise of inherent authority to remedy a violation of defendant's Sixth Amendment right to counsel of choice and recognizing that "[w]e have no doubt . . . that federal courts are empowered to deal with such threats to the integrity of the judicial process").

In this case, the government has seized nearly all of Mr. Lacey's assets, including substantial assets earned long before creation of Backpage. Mr. Lacey has challenged the government's unlawful seizures at every possible time in every possible court; yet, the Funds remain subject to seizure because the government has evaded review of the seizures. Mr. Lacey needs access to the Funds to mount a proper defense to the serious criminal charges pending against him in the District of Arizona, a case which has been designated complex. This Court should, as a matter of its inherent authority, order the release of the Funds, which are not traceable to illegality of any kind, to ensure that Mr. Lacey's Sixth Amendment rights are no longer violated. Alternatively, this Court should hold a tracing hearing, at which the government must trace the full value of the Funds to Backpage, or the Funds should be released to Mr. Lacey.

/

/

# CONCLUSION

For all these reasons, Mr. Lacey respectfully requests that this Court order the immediate release of the Funds, or in the alternative, schedule a tracing hearing at which the government must rebut Mr. Lacey's proof that the Funds or untainted, or this Court will order the immediate release of the Funds.

Dated: October 11, 2019        LIPSITZ GREEN SCIME CAMBRIA LLP

*/s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
*Attorneys for Michael Lacey*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of October 2019, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

*/s/ Rachel Skrzpek*
Rachel Skrzpek

Erin E. McCampbell, emccampbell@lglaw.com
Anthony R. Bisconti, tbisconti@bienertkatzman.com
Ariel A. Neuman, aan@birdmarella.com
Bruce S. Feder, bf@federlawpa.com
James C. Grant, jimgrant@dwt.com
Paul J. Cambria, pcambria@lglaw.com
Robert Corn-Revere, bobcornever@dwt.com
Janey Henze Cook, janey@henzecookmurphy.com
Thomas H. Bienert, Jr. tbienert@bienertkatzman.com
Whitney Z. Bernstein, wbernstein@bienertkatzman.com
Gary S. Lincenberg, glincenberg@birdmarella.com
Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com
John Jacob Kucera, john.kucera@usdoj.gov