UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

Present: The Honorable   R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:          Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:**   **(IN CHAMBERS) Order re: Claimants' Motion to Access and Use Purportedly Inadvertently Produced Materials [DE 69]**

On August 1, 2018, Claimants James Larkin, Michael Lacey, Scott Spear, and John Brunst (collectively, "Claimants") filed the instant action challenging the government's warrants for pre-trial civil forfeiture of numerous assets in connection with the ongoing criminal matter *United States of America v. Michael Lacey, et al.*, No. 18-CR-00422-PHX-SPL (D. Ariz.). That case charges Claimants with conspiracy to facilitate prostitution in connection with their relationship to the third-party advertising website Backpage.com, among other charges. The seized funds at issue here are the proceeds of alleged illegal activities associated with Backpage and funds commingled with those proceeds.

On October 23, 2018, this Court ordered a stay of proceedings pending resolution of the criminal case in Arizona District Court (ECF No. 85). On September 23, 2019, the Ninth Circuit vacated this Court's Stay and remanded for further proceedings (ECF No. 99), and on October 4, 2019, the Court ordered the case reopened (ECF No. 101.)

Presently before the Court is Claimants' Motion to Access and Use Purportedly Inadvertently Produced Materials (ECF No. 69.) For the following reasons, the Court **DENIES** Claimant's Motion.

I. **FACTUAL BACKGROUND**

A. **The Documents**

On March 28, 2018, a grand jury in the District of Arizona returned an indictment against Lacey and the other co-defendants in the Arizona Prosecution. The indictment and charges are related to Claimants' purported involvement with the third-party advertising website www.backpage.com ("Backpage") and advertisements for prostitution posted on that website. Thereafter, four Magistrate Judges in the Central District of California issued seizure warrants for certain assets related to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

indictment. These warrants were based in part on affidavits from Postal Inspector Lyndon Versoza (Versoza).

The government made its first production of documents to Claimants on May 24, 2018. On July 2, 2018, the government produced additional materials which it stated had been mistakenly withheld from its first disclosure. Subsequently, however, on July 30, the government requested the return of 118 files on the basis that it had produced them inadvertently, totaling 9,745 pages. Claimants filed the instant motion with this Court on September 25, 2018.

Over a year has passed since that motion was filed, during which time proceedings have been stayed in this Court. In that intervening period, the parties have come to agreement regarding all of the disputed documents except eight. The eight disputed documents are a series of internal memoranda from the United States Attorney's Office for the Western District of Washington that were written in connection with Federal grand jury proceedings in that district involving Backpage in 2012 and 2013 (the "memos"). The memos describe potential claims against Backpage and evaluate the strengths and weaknesses of different theories of prosecution based on the facts as they were known at that time.

### B. The Order Compelling Destruction in *Lacey*

On January 28, 2019, the Arizona District Court issued a sealed order in the associated criminal matter denying Claimants' request to use the memos and directing them to destroy the copies in their possession. In reaching its order, the court determined that the memos were attorney work product, that the government had not waived work product protection through disclosure, and that neither *Brady v. Maryland*, 373 U.S. 83 (1963), nor *Giglio v. United States*, 405 U.S. 150 (1972) compelled their production. In deciding the latter points, the *Lacey* Court found specifically that "the investigation that took place in the Western District of Washington is wholly separate" from the present criminal matter, and as a result "the legal analyses performed by the U.S. Attorney's Office for the Western District of Washington are seemingly irrelevant to the indictments and proceedings in this case." *United States of America v. Michael Lacey, et al.*, No. 18-CR-00422-PHX-SPL (D. Ariz. 2019) (Sealed). The Court has reviewed that decision and concurs with the Arizona District Court's holdings on those issues.

### II. DISCUSSION

The Court notes at the outset that it would be loath to contravene the discovery order of another District Court in the midst of a criminal proceeding. While the civil forfeiture actions at issue here are technically distinct from the criminal cases in *Lacey*, contradicting that Court's order would result in the return to Claimants of the same documents that the Arizona District Court has already ordered them to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

destroy. However, as Claimants assert that the *Lacey* Court did not address two of the arguments in their Motion, the Court will address them here.

    A. **The Memoranda Do Not Provide Evidence of Government Misconduct**

    Claimants argue that the memos should not be shielded by the work product doctrine because they constitute evidence of government misconduct. Specifically, Claimants assert that the memos show that the government used the Versoza affidavits to obtain warrants for the seizure of property upon legal and factual grounds that the government knew to be false. Upon review of both the March 28, 2018 Versoza Affidavit (ECF No. 6, Ex. 1) and the April 3, 2012 and January 16, 2013 memoranda that Claimants submitted under Seal in support of their Motion (ECF No. 61-4 and 61-5), the Court disagrees.

    As an initial matter, the Court notes that the memos were drafted in 2012 and 2013 by the US Attorney's Office for the Western District of Washington. The affidavits upon which the seizure warrants in these forfeiture actions are partially based were signed by Postal Inspector Lyndon Versoza in the Central District of California in 2018. The state of the information upon which the memos were drafted was five years old or more when the affidavits were signed, and it is nowhere asserted that Versoza had ever seen them. Claimant's theory that the memos provide insight into what was in the Versoza's mind at the time he drafted the affidavits is therefore already a tenuous one.

    Claimants' Motion states that the memos are relevant because "Versoza's affidavits were premised primarily on Backpage.com's practices before 2013." (Mot. to Access at n. 5, ECF No. 69.) However, even assuming that this was true, the fact that the affidavit described practices that existed in 2013 would not mean that the state of the government's knowledge about those practices or about Backpage's application of them would be the same after years of further investigation. The proper subject matter for an argument about the evidentiary basis of the affidavits is the evidence cited in the affidavits themselves.

    Claimants argue the memos demonstrate that "[t]he affidavits failed to disclose adverse facts and adverse law, including, importantly, facts and law that seriously undermined the government's claim that its agent could tell just by looking at an ad whether the person posting the ad intended to engage in unlawful activity." (Claimant's Reply at 3:11-13, ECF No. 119.) More forcefully put, Claimants state that "the government knows, but failed to inform this Court, [that] it is impossible to determine from reading a third-party adult ad if it relates to illegal conduct, whether prostitution, trafficking, or otherwise." (Mot. at 5:9-11.) The Court finds that this proposition is unsupported by Claimants' cited law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

Claimants cite to two cases in support of the above proposition: *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015), and *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1282 (W.D. Wash. 2012). (Mot. at 5:12.) Neither case, however, supports the conclusion that "it is impossible to determine from reading a third-party adult ad if it relates to illegal conduct[.]" While the former case does, as defendants assert, contain the quote "not all advertisements for sex are advertisements for illegal sex," nowhere does it contain the assertion that it is impossible to tell the two apart. *Dart*, 807 F.3d at 234. In fact, the immediately preceding paragraph in that case contains a list of adult advertisements on Backpage that the Seventh Circuit was able to tell, by looking at them, were for sexual services that were *not* illegal sex. *Id.* The Court in *Dart* was therefore clearly not asserting that such a distinction was impossible.

Further, the Versoza affidavit does not suggest that its drafter simply "looked" at the advertisements and determined whether they were for prostitution based on instinct. Rather, the affidavit explains the particular combinations of language and images that suggest how advertisements indicative of prostitution differ from advertisements for legitimate services in the same industry. For instance, in paragraph 33 of the affidavit Versoza states that "[f]rom my training and experience, I know that legal massage advertisements do not typically depict sexual images." (Versoza Aff. ¶ 33(c).) Shortly thereafter he gives the following appraisal of a Backpage advertisement:

> I visited Backpage.com and navigated to the Los Angeles/Dating/Women for Men section. I clicked on the first ad listed (Post ID 142685832). This ad contained approximately one dozen pictures of women posing sexually, many on a bed wearing lingerie. Super-imposed over a few of the images was the text: "JENNY HERE TODAY – FBSM – BETTER THAN NURU." An open source search for "FBSM" indicated that FBSM is code language for "Full Body Massage." An open source search for "NURU" produced the following description: NURU is a Japanese erotic massage technique in which one or more masseuses would rub their body against the client's body after both parties are nude.
>
> Based on this review, I believe this to be an advertisement in promotion of prostitution. From my further review, I observed thousands of other ads that posted similar content consistent with advertising prostitution.

(*Id.* ¶ 64(b).) Versoza likewise described a variety of other coded words and phrases typical of advertisements for prostitution: "These terms and phrases include, 'roses' (money, e.g., '150 roses/half hour'), 'in-call' (where the customer goes to the prostitute's location), 'outcall' (where the prostitute goes to the customer's location), 'GFE' (girlfriend experience)[,]" etc. (Versoza Aff. ¶ 31(a).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

The issuing judge may rely on the training and experience of the affiant officer when deciding whether probable cause exists to issue a warrant. *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). Here, Versoza articulated the specific images and terms that formed the basis of his assessment and described how they differed from legal advertisements for services in a way that made them stand out as likely advertising prostitution. The idea that this knowingly contravenes a rule that, as a matter of law, "it is impossible to determine from reading a third-party adult ad if it relates to illegal conduct," is incorrect.

Furthermore, the crux of the affidavit is not that Backpage merely failed to prevent the posting of third-party advertisements for prostitution, but rather that it took affirmative steps to "sanitize" those advertisements' language in order to make them less "overt." (*Id.* ¶ 30.) This would in effect permit advertisements for prostitution to remain posted while reducing their chances of detection by law enforcement. (*See id.* ¶ 30(e)) (quoting an internal email which stated that "'[i]llegal content removed' through Backpage's moderation processes was 'usually money for sex act.'"). This theory of prosecution is distinct from those in cases such as *Dart v. Craigslist*, in which the plaintiff sought to impose liability on a third-party advertising website on the theory that its "adult services" section, when combined with the site's search function, "induce[d] its users to post unlawful ads." *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009). As *Dart v. Craigslist* and similar cases do not contradict the premise on which the warrants in this case were issued, it is hardly indicative of misconduct that Versoza did not cite them.

The Court finds no indication that the government is trying to shield prosecutorial misconduct behind the attorney work product doctrine, and as such denies Claimant's Motion insofar as it is based on that ground.

### B. The Claimants Have Not Shown Substantial Necessity under Fed. R. Civ. Pro. 26(b)(3)(A)

The Attorney work-product doctrine protects from discovery in litigation mental impressions, conclusions, opinions, or legal theories of a party's attorney that were prepared in anticipation of litigation or for trial. *Am. Civil Liberties Union of N. California v. United States Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (citations omitted). The Federal Rules of Civil Procedure provide that attorney work product may be discovered where "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26. Different standards govern disclosure of fact and opinion work product. Here, Claimants seek access to both. The Court addresses fact work product first.

Substantial need for fact work product "is generally met if [the moving party] demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015).

While the factual content Claimants seek from the memos may be relevant to the case in that they discuss Backpage's operations during a particular time period, the Court does not believe that the factual content has a unique value apart from what is already in the Claimant's possession. Claimants identify the following categories of pertinent information in their Motion: (1) information supporting the legal argument that it is impossible to determine the illegal nature of an add by looking at it; (2) information related to Backpage's ad screening and moderation practices; (3) information related to Backpage's evolving ad review practices; and (4) information regarding Backpage's cooperation with law enforcement. The first of these categories of information has been discussed above, and the substance of any further arguments on the adequacy of the Versoza affidavits will be found in the affidavits themselves, not in anything the government's memoranda can provide. The next three categories are notable for the fact that all of them are categories of information about Backpage's own practices. It is hard to conceive of why the Claimants need a privileged internal memorandum to provide them with information about the practices of a company with which they were themselves closely associated. The Court therefore finds that Claimants' need for fact work product does not justify discovery of the memos.

"A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required by Rule 26(b)(3) for non-opinion work product." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). "[O]pinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling. *Id.* Claimants argue that they need access to the opinion work product in the memos because "[f]or some arguments in the Seizure Motion . . . involving the state of mind, intent, and motivation of the government and its actors, the Memos could play a significant role in the remedy the Court fashions for the government's transgressions." (Mtn. to Access at 17:22-25.)

Claimants' argument here fails for the simple reason that even if Claimants assert that Versoza's mental impressions in drafting the affidavits are at issue, they have not asserted any basis from which the Court can infer that the memos in question are indicative of what Versoza's mental state was, or even that he had read them. The memoranda were drafted by attorneys in a different state in relation to grand jury proceedings that took place more than five years before Versoza drafted his affidavit. As the memos are not relevant to the mental impressions of any party in this case, the Court finds no basis for ordering their discovery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 9, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Access and Use Purportedly Inadvertently Produced Materials.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | SMO |